Clark v. Baker.

## CLARK v. BAKER et al.

In considering the operation of a mortgage upon subsequently acquired title, it is immaterial whether it be regarded as a conveyance of a conditional estate, as at common law, or as creating a mere lien or incumbrance, as by the law of this State. Whatever in the instrument, treating it as a conveyance, would operate to transfer a subsequently acquired title to the grantee, equally operates, treating the instrument as a lien or incumbrance, to subject such acquired interest to the purposes of the original security.

By the common law, there were only two classes of conveyances which were held to operate upon the after-acquired title—those by feoffment, by fine, or by common recovery—and those by indenture of lease. No other forms of conveyance, in the absence of covenants of warranty had any effect in transferring the title subsequently acquired. A grant or lease only operated upon the estate actually held at the time of its execution by the grantor or releasor.

In the United States, conveyances by feoffment, fine, or common recovery, are not in use, and no greater effect is given to a grant or a conveyance, by bargain and sale, or lease and release, unaccompanied with covenants of warranty, than at the common law under the Statute of Uses.

Clark *v.* Baker.

The general doctrine prevailing in the United States is that no estate can be passed by the ordinary terms of a deed, unaccompanied with covenants of warranty, which is not vested in interest at the time, and that estates subsequently acquired, whether by purchase or descent, are unaffected by such previous conveyance in the hands of the grantor or those claiming under him.

The general doctrine is, however, subject to this qualification—that where it distinctly appears upon the face of the instrument, without the presence of the covenant of warranty, either by recital or otherwise, that the intent of the parties was to convey and receive reciprocally a certain estate—the grantor will be estopped from denying the operation of the deed according to such intent.

The 33d Section of the Act concerning conveyances changes the rule of the common law as to the effect of deeds, under the Statute of Uses, upon subsequently acquired interests of the grantor, and gives to them an operation equivalent to the most expressive covenant of warranty, and this section applies to mortgages equally as to conveyances absolute in their form.

A mortgagor is under obligation, from the nature of the mortgage contract, to preserve the property pledged for the purposes of the original security, and, on grounds of public policy, to insure good faith and fair dealing, he is estopped, independent of covenants of warranty, from denying the existence of the lien which he has attempted to create, or defeating its enforcement against the property on which it was placed—and those claiming under the mortgagor are equally estopped.

One Clark being in the occupation of certain premises conveyed them to one Baker, who executed a mortgage back to Clark as security for the purchase money. The conveyance and mortgage were simultaneous acts, and both were of the premises in fee. The legal title was not at the time in Clark, and Baker afterward purchased it in, and then executed a mortgage to one Touchard; *Held*, that the title subsequently acquired by Baker inured to the benefit of his mortgagee, Clark, and that a purchaser under the decree foreclosing Touchard's mortgage could only claim in subordination to Clark.

APPEAL from the Twelfth District.

The mortgage from Baker to Clark, executed to secure the purchase money of the premises in question, in its terms, doth "grant, bargain, sell, release, remise, and convey" the premises to Clark his heirs and assigns forever, subject to the usual condition in mortgages.

All other material facts are stated in the opinion of the Court.

The case was twice argued. After the first argument an opinion was rendered reversing the judgment below, but that opinion is not reported, because upon the reargument, the Court receded from the views then expressed.

*Saunders & Hepburn* and *Chas. H. S. Williams,* for Appellant.

I. Claims under adverse titles cannot be litigated in a suit to foreclose a mortgage against the will of the parties holding such

titles. (*Langton* v. *Langton*, 19 Jurist, 1070; Fisher on Mortgages, 181, Secs. 287, 784.)

At page 142, it is said of a suit for foreclosure:

"In the prosecution of which the plaintiff may not debate the title of the estate, because the course of the Court is to go no further than to take away the equity of redemption, and leave the plaintiff to such title as he has, but not to amend it."

And, again, at Sec. 784: "No sale can be made of a mortgaged estate, as against a mortgagee, with paramount title, unless it be made subject to the mortgage."

This position is fully sustained by the cases of *Eagle Fire Ins. Co.* v. *Lent*, 6 Paige, 637; *Coming* v. *Smith*, 2 Seld. 84; *Holcomb* v. *Holcomb*, 2 Barb. S. C. 22.

So far as Boyreau's claim of the true title is concerned, he must be regarded and treated as an adverse claimant; and the fact that he held, through Baker, the right to redeem from Clark's mortgage, does not give Clark the right to compel him to litigate his adverse legal title in the foreclosure suit. He does not choose to defend against a mere foreclosure, leaving the legal rights of the parties to subsequent litigation at law, and ought not to be dragged in to have his adverse title passed upon. He asked to be dismissed, leaving the foreclosure part of the suit undefended.

As to the true title, which was derived from Lease and Vallejo, he did not hold under the mortgagor subsequent to Clark's mortgage, for Clark's mortgage did not cover that title. Whether it acquired it by estoppel is a distinct question, which belongs in another connection.

In *Coming* v. *Smith*, (2 Seld. 82,) which was a case very like the one at bar, the plaintiff made Smith a defendant, alleging that he claimed as purchaser or mortgagee, and that his interest accrued subsequent to the lien of the mortgage. Smith answered setting up title adverse to that held under the mortgage.

The Court of Appeals said: "The cases all concur in upholding the rule stated by Chancellor Walworth, in the case of the *Eagle Fire Ins. Co.* v. *Lent*, (6 Paige, 637,) viz: 'So far as mere legal rights are concerned upon a bill of foreclosure, the only proper parties to the suit are the mortgagor and mortgagee, and those who have acquired rights or interests under them,

subsequent to the mortgage, and the mortgagee has no right to make one who claims adversely to the title of the mortgagor, and prior to the mortgage, a party defendant, for the purpose of trying the validity of an adverse claim of title in this Court.'" (See *Holcomb* v. *Holcomb*, 2 Barb. 22.)

II. A mortgage is not a "conveyance in fee simple absolute," and is not embraced by the terms of the 33d Section of the Act concerning conveyances.

That the word "conveyance," when used in that Act, without qualification, includes a mortgage, is not denied; and hence, when the Legislature intended to exclude from its signification mortgages, a qualification was added, and the 33d Section is limited to a "conveyance purporting to convey in fee simple absolute."

Is a mortgage a conveyance "in fee simple absolute" in any sense? After its execution who is the legal owner of the land? Whose creditors will take it on execution? (*Waters* v. *Stewart*, 1 Caine's Cas. in Er. 66, 70; *Jackson* v. *Willard*, 4 J. R. 41; *Phyfe* v. *Riley*, 15 Wend. 255.) Whose heirs will inherit it, those of the mortgagor or those of the mortgagee?

All of the mortgagee's interest passes by the transfer of the accompanying note, which may be done by mere delivery if payable to bearer. A mortgage may be assigned by mere delivery, but it can hardly be said that "the fee simple absolute" in land can be so transferred. If the mortgage conveys the "fee simple absolute," surely the heir of the mortgagee, and not his executor, will take the land, but the contrary is well settled.

If the legal estate passes to the mortgagee, why is it that an outstanding mortgage is not a breach of a covenant of seizin made by mortgagor, as held in *Sedgwick* v. *Hollenback*, (7 J. R. 376.) If the estate is in the mortgagee, the covenant of seizin is broken instantly on its execution.

It is said, in 1 Pow. on Mortg. 166 *a*, that "a mortgagor in possession gains a settlement because the mortgagee, notwithstanding the form, has but a chattel, the mortgage being only a pledge to him for security of his money; and the original ownership of the land still residing in the mortgagor, subject to the legal title of the mortgagee only so far as such title is requisite to the end of his security."

Clark *v.* Baker.

In *King* v. *St. Michael's Bath*, (2 Doug. 130,) Lord Mansfield says:

"If the estate, (on which a pauper resides,) is substantially his property, that is sufficient whatever forms of conveyance there may be; and therefore a mortgagor gains a settlement because the mortgagee, notwithstanding the form, has but a chattel, and the mortgage is only a security. It is an affront to common sense to say the mortgagor is not the real owner."

We admit that the possession is a significant fact in that case, but the case proves that the mere execution of a mortgage did not, even in the days of Lord Mansfield, convey in "fee simple absolute"—that the mortgagee took but a chattel interest.

The intention of the Legislature to provide for cases of absolute sale, as distinguished from those of mortgage, could not have been more evident if it had added that mortgages were not to be deemed to be such conveyances—the addition would have been but tautology. It may be asked, what general description could more effectually exclude mortgages than conveyances in fee simple absolute? A mortgage does not, even in form, convey any estate absolutely. The whole instrument must be read together—we must not stop at the end of the granting or *habendum* clause, but read it through; and then what is it?—an "absolute" grant on one side, and an agreement to reconvey upon payment on the other. It is a very different instrument. It pledges the property to be sold for the payment of the debt. The mortgagee can get nothing but his money in any event. Nor can he, as mortgagee, ever become the owner of the land, even by the terms of a modern mortgage.

But what is a "fee simple absolute?" and does a modern mortgage create in the mortgagee such a fee, however general its terms?

A "fee simple," according to Coke, Plowden, Blackstone, and Hale, signifies that the land belongs to the owner, and passes, at his death, to his heirs, and not to his personal representatives. The estate of a mortgagee does not pass to heirs, but accompanies the debt secured by it into the hands of the executor or administrator. A "qualified fee," a "determinable fee," a "conditional fee," are estates named in contradistinction to a "fee simple." A mortgage, even by the ancient law, was deemed a

"feoffment upon condition," or the creation of a "base fee," or "determinable fee." (Hilliard on Mort. 3; Wade's Case, 5 Coke, 114; Goodale's Case, 5 Id. 95.)

Hilliard defines a mortgage to be a "conditional conveyance of land," and the estate conveyed by it an estate upon condition. (1 Hill. 2.)

In Massachusetts, where the mortgagee has the right of entry before forfeiture, a mortgage is held to be a conveyance of, not a "fee simple absolute," but a "fee conditional."

In *Erskine* v. *Townsend*, (2 Mass. 495,) the Court says: "A mortgage in fee, is an estate upon condition, defeasible by the performance of the condition according to its legal effect."

In New York it has been repeatedly held that a mortgage is "a mere security for money." (*Phyfe* v. *Riley*, 15 W. 254; 1 Caine's Cases in Error, 66—70; *Jackson* v. *Willard*, 4 J. 41; *Astor* v. *Miller*, 2 Paige; *Bell* v. *Mayor of New York*, 10 Id. 49.)

The case of *Bogy* v. *Shoal*, (13 Missouri, 378,) is a strong authority in our favor. The decision is, under a statute like ours, that an after-acquired title would not pass or inure to the grantee by quitclaim deed, or deed purporting to convey all the grantor's right, title, and interest. The Court says, that by the statute, it "was surely not intended that a quitclaim deed, although the deed uses language to pass the fee, and not any smaller estate would, therefore, pass a new title not belonging to the grantor when he makes the deed. It was hardly intended to apply to a deed, conveying all right, title, and interest, of the grantor. Such a deed will undoubtedly pass the land itself, if the grantor has an estate therein at the time of the conveyance, but it passes no estate which was not then possessed. Nor would it be in accordance with the manifest intent of such a conveyance that after-acquired title should pass."

"The term 'absolute,' gives a clue to the meaning of the whole phrase, which I think is drawn from common usage, and not from the technical phraseology of law writers. Every man unlearned in the law, understands what a deed conveying a 'fee simple absolute' is. They understand it to be a deed which professes or purports to convey an indefeasible title."

It is of little consequence whether the word "absolute" in the statute, is applied to the character of the deed or the character

of the estate held by the grantee under it—whether it is held to mean a conveyance in fee, absolute in its terms, or that it vests in the grantee an absolute estate in fee—a mortgage is not an absolute conveyance.    The estate of the mortgagee is not an absolute estate in fee.

There can be no misunderstanding the words "purporting to convey the same, (real estate or land,) in fee simple absolute." No one can doubt that it means a conveyance which would, by its terms, absolutely convey a fee simple, if the grantor had it.

*Campbell & Pratt* and *Hoge & Wilson*, for Respondent.

I.    On well settled principles both of law and equity, if Baker, after getting possession from Clark by purchase from and entering through and under him, and after making a mortgage on the estate in and to the premises for the unpaid purchase money, bought in an elder and superior title than he had previous to executing his mortgage deed, such after-acquired title instantly inured to the benefit of and strengthened the prior mortgage.

1.    It is settled doctrine that a mortgagor in possession cannot bar a mortgage by a fine and non-claim; for, although the mortgagee be out of possession, (and the nature of the contract of mortgage requires generally that it should be so until condition broken,) it would be against the original design of the contract that any act of the mortgagor, except the payment of the money, should deprive the mortgagee of his security—and, therefore, on principle no actual entry by the mortgagee is requisite to avoid such fine.    (1 Pow. on Mort. 6th Eng. Ed. 165, and cases cited.)

2.    It is an elementary principle, founded upon common honesty, that a mortgagor is never permitted to dispute the title of his mortgagee, for the reason that no man is permitted to dispute his own solemn deed.    (1 Pow. on Mort. 166.)

3.    If a mortgage be made of an estate to which the mortgagor has not a good title, and then he who has the real title conveys to the mortgagor, or his representatives, with a good title, the mortgagee will be entitled, in equity, to the benefit of it, for it will be considered then as a graft on the old stock, and as arising in consideration of the former conveyance.    (1 Pow. on Mort.

190; 2 Vern. 11; *Bailey* v. *The Trustees of Lincoln Academy*, 12 Miss. 174.)

4. Beyond this, it is well settled "that it is the duty of the mortgagor to get a title, if he had it not at the date of his mortgage, for the benefit of the mortgagee." (4 Adol. & Ell. 782; 31 Eng. C. L. 178.)

"A mortgagee is not allowed to say that he had nothing in the land. It would be bad faith; and if he purchased up the title, not having it when the mortgage was given, he has done no more than his duty, and the new title, when obtained, will fall under the obligation of the mortgage." (1 Term, 758; 5 Halst. 102.)

5. It is a general principle that if a trustee, mortgagee, mortgagor, or purchaser, gets an advantage by being in possession, or behind the back of the party interested, and purchases in an outstanding title or incumbrance, he shall not use it for his own benefit, and the annoyance of him under whose title he entered, but shall be considered as holding it in trust. (4 Mon. 291; 3 Cal. 263; 4 Id. 247; *Hardeman* v. *Cowan*, 10 Sm. & M. 486; *Tartar* v. *Hall*, 3 Cal. 263; *Doe* v. *Pegge*, 1 T. R. 758; *Cooper* v. *Galbraith*, 3 Wash. C. C. 546; *Denn* v. *Vanness*, 5 Halst. 102.)

6. Baker having obtained possession from and under Clark, cannot by the purchase of an outstanding title, defeat the claim of his vendor and mortgagee, for the purchase money. Equity treats the purchaser who stands in the relation of a mortgagor to a mortgagee and from whom he obtained the possession, as a trustee for the vendor and mortgagee, (among other reasons before assigned,) because he holds under him; and acts done to perfect the title by the former when in possession of the land, inure to the benefit of him under whom the possession was obtained. (6 How. U. S. 284.)

The preceding principles and authorities clearly establish without any reference whatever to the aid and effect of covenants of warranty contained in a mortgage of lands, that Baker could not set up the defense here offered by Boyreau; and Boyreau, claiming as he does through and from Baker, with actual notice of Clark's rights, it is plain and equally well settled, by the same principles and authorities, is also precluded.

II.  By the 33d Section of the Conveyance Act of this State, the technical distinctions, which existed at common law between the various kinds of conveyances, are entirely abolished; and, whether a title subsequently acquired will inure to the support of a previous conveyance is decisively settled.  That section provides, that, " If any person shall convey any real estate, by conveyance purporting to convey the same in fee simple absolute, and shall not, at the time of such conveyance, have the legal estate in such real estate, but shall afterward acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be valid, as if such legal estate had been in the grantor at the time of the conveyance."

The term " estate " has no relation to the title, or the description, or the thing conveyed.  It denotes the quantity of interest in the thing conveyed, whether it be for years, for life, or in fee; whether in possession or expectancy, and whether absolute or conditional.

A deed, therefore, like the mortgage conveyance in question, which conveys to a man the land, *habendum* " to him and his heirs and assigns forever," is a conveyance purporting to convey an estate in fee simple absolute.  Words importing to grant, bargain, sell, or convey, the land, in common and legal parlance, presuppose that there is an interest upon which they are to operate; (2 Gilman, 141;) and, by such language, interests are conveyed where interests exist; but, where they do not exist and are afterward acquired, they pass, if not by implied covenants of title, certainly by force of the statute.

To avoid this, it is urged by counsel for Appellant, that this inuring statute, concerning conveyances, does not embrace mortgages, but, with how little reason, we will next consider:

1.  The term " conveyance," as used in the 33d Section, does embrace mortgages, as well as ordinary deeds of land, for, by the 36th Section of the same statute, it is declared that, " The term ' conveyance,' as used in this Act, shall be construed to embrace every instrument in writing by which any real estate is created, aliened, mortgaged, or assigned."  This is explicit.  But,

2.  Whether, because the conveyance was a mortgage, and did not lodge the fee simple *in presenti* in Clark, but only placed it where it would pass for his benefit on foreclosure, sale, and fail-

Clark *v.* Baker.

ure to redeem, makes no difference as to the direction the subsequently-acquired title would take after its acquisition.

It would inure to Clark's mortgage, as well because of Baker's duty to get a good title, if he had it not at the date of the mortgage, as because of the statutory effect upon it when obtained.

There is no difference in this respect between a conveyance of land in fee simple by deed absolute, and by mortgage of the fee simple of the land in security under the statute.

In either case, the estate, the fee simple intended to be acted upon by the conveyance, is the same; and,

3. The deed conveying on its face the land in fee, the statute says it shall convey any subsequently-acquired title; the mortgage securing the fee simple of the land conveyed by foreclosure and sale, and failure to redeem, equally shows on its face an intent to convey in fee, and causes the after-acquired title, if obtained before foreclosure, to pass to the purchaser under the foreclosure and sale. Any other construction would put a quitclaim deed on the same footing in law and equity with a mortgage in fee simple in the most unmistakable terms.

*C. T. Botts,* also, for Respondent.

I. The principle expressed in the quaint phraseology of the common law, "the interest, when it accrues, feeds the estoppel," applies to this case.

In the case of feoffment by livery of seizin, the feoffee, by operation of law, became immediately seized of any title afterwards acquired by the feoffer. Under this rule, some question arose as to whether this principle came within the doctrine of estoppel, or whether it was a separate and independent principle. It matters not what it was called, or under what head it came, the effect was the same upon a purchaser from the feoffer. If it operated by way of estoppel, which affects only parties and privies, then the subsequent purchaser was a privy in estate. Thus, in *Rawlyns' Case,* (Coke's Rep. Part 4, p. 53,) Cartwright leased to Warlow, when he had nothing in the premises, and afterwards he obtained a term of years from Rawlyns, and then he, Cartwright, redemised to Rawlyns. In a contest between Rawlyns and Warlow, the Court held, that although Cartwright had nothing in the premises when the lease was made to War-

low, it was, notwithstanding, good against him, by " conclusion," and Rawlyns was concluded also. For, says the Court, " all parties and privies in estate, or interest, are bound by estoppel, and this case is no other."

So, in *Trevivan* v. *Lawrence et al.* reported in 1 Salk. 276, the Court says : " Not only the parties, but all claiming under them in this recovery, would be bound by this estoppel: as if a man make a lease by indenture of D, in which he hath nothing, and after purchase D in fee, and after bargains and sells it to A and his heirs, A shall be bound by this estoppel; and where an estoppel works on the interest of the land, it runs with the land into whose hands soever the land comes, and an ejectment is maintainable upon the mere estoppel."

That this consequence attached to a conveyance, by feoffment, by a common recovery, of an estate of freehold, or a term of years by indenture of lease, is unquestionable; but it was said that a grant or release carried with it no such effect; that these modes of conveyance passed only the interest vested in the grantor at the time of the conveyance, and that they possess no power to bind and transfer future estates by estoppel. This is undoubtedly the English doctrine in relation to conveyances by grant and by release.

Now, a release or quitclaim is, in express terms, not a convey. ance of the land, but a release of the present existing interest of the grantor. The word " grant" is used still in England in its strict technical sense, meaning a conveyance of incorporeal hereditaments, of which, in their nature, there can be no livery of seizin. We understand now the ground of the distinction between feoffments and common recoveries, and releases, and grants. To operate upon after-acquired interests, the conveyance must be accompanied by the notoriety of livery of seizin, or its equivalent. In England, this equivalent is found in the record of judgment in a common recovery. In the United States, the registry of a deed is equivalent to livery of seizin. (See *Pidge* v. *Tyler*, 4 Mass. 545; *Marshall* v. *Fiske*, 6 Id. 30.)

II. By parity of reasoning in the United States, where we have no conveyances by way of fine and recovery, and where delivery of the deed and registry is substituted for livery of

seizin, any deed of a freehold estate, delivered and registered, operates to vest an after-acquired interest in the grantée; and so it has been held by the best authorities. (See *Van Rennselaer* v. *Kearney*, 11 How. 297; *Carver* v. *Astor*, 4 Pet. 1; *Jackson* v. *Bull*, 1 Johns. Cas. 81; *Jackson* v. *Murray*, 12 Id. 204; *McGee* v. *Eustiss*, 5 Stew. & Por. 420; *Griffith* v. *Huston*, 7 J. J. Marsh. 385; *Brown* v. *McCormick*, 6 Watts, 60; *Reider* v. *Craig*, 3 McCord, 411; *Fairbanks* v. *Williamson*, 7 Greenl. 96; *Trull* v. *Eastman*, 3 Met. 121; *Bean* v. *Welsh*, 17 Ala. 172.)

But even if it were held that the better authority required a covenant of warranty to work an estoppel, we have two reasons to show that this doctrine could not be applied to the case at bar; first, because the doctrine never was applied to mortgages; and, secondly, because our statute settles the rule against the necessity of a clause of warranty in any case.

In equity, it was always held, that a conveyance of land to one and his heirs, expressed the intention upon the part of the grantor to convey a fee simple title, and that he would not only be estopped from saying that he had no title when he so conveyed, but that any subsequent title acquired by him, would vest in him as a trustee for the benefit of his grantee. (See *Hobson* v. *Trevor*, 2 Peere Wms. 191; *Wright* v. *Faucett*, 1 Ves. 400; *Breckenridge* v. *Churchill*, 3 J. J. Marsh. 13; *McWilliams* v. *Nisly*, 2 Serg. & Rawle, 515; *Varick* v. *Edwards*, 11 Paige, 289; *Edwards* v. *Varick*, 5 Denio, 664.) But the estoppel of the mortgagor has always been admitted, even in the English Courts of Common Law, where this effect is denied to an ordinary conveyance. In *Doe* v. *Clifton*, (4 Adol. & Ellis, 31 C. L. 358,) the Court having taken time to confer with Tindall, C. J. says: "It is not competent for the mortgagor to derogate from his own mortgage by showing a prior deed." In *Doe* v. *Vickers*, (4 Adol. & Ellis, 31 C. L. 345,) which was an action of ejectment brought by the mortgagor against the mortgagee, the defendant, still in possession, had taken a lease from the Earls of Berwick and Shrewsbury, who held by title anterior and paramount to the mortgage. The defendant claimed that he held the premises by a title acquired subsequently to the mortgage, and upon which the mortgage could not operate. Lord Denman, C. J. says: "He mortgages the land as his own; then ejectment is brought

against him by a third party, in which he consents to a verdict, and takes a fresh lease from that party; what effect can this have between himself and his mortgagees?" Littledale, J.: "If he found that the Earls of Shrewsbury and Berwick had a title superior to his own, it was his duty to get a good title. He cannot set up such a title after he has obtained it as an answer to this ejectment." Patterson, and Coleridge, Jr. concurred. So, in *Barber* v. *Harris,* (15 Wend. 617,) Nelson, C. J. uses this language : " The defendant having executed the mortgage under which the plaintiff claimed to recover the possession, was estopped from denying that he had title to them and from setting up title in third persons."

Much stronger than these is the case at the bar, where it appears that Baker, through whom the defendant claims, went into possession of the premises under title from Clark.

But if there were any doubt resting upon this question, our statute would dispel it. But it is objected that the statute only applies to conveyances purporting to convey a fee simple absolute, and that a conveyance by way of mortgage is not the conveyance of a fee simple absolute. It is undoubtedly true that the term " absolute " is sometimes used, in common parlance, as contradistinguished from a mortgage. Thus it is said that a deed, absolute on its face, may be shown to have been intended as a mortgage by parol. The expression is convenient but incorrect. It should be said, that parol testimony is admissible to prove an agreement for a defeasance, not expressed in the deed of conveyance. But in whatever sense the word absolute may be popularly used, the term " fee simple absolute " is a technical phrase, and has a determinate technical meaning. And it is a well-settled principle, that when a term has a technical, and also a popular, meaning, the Legislature shall be taken to have used it in its technical sense. (*Lawrence* v. *Bagley,* 3 Mass. 510.) In truth, there is something of tautology in the expression " fee simple absolute." Blackstone (2 Com. 104,) says : " Estates of inheritance are divided into inheritances absolute, or fee simple, and inheritances limited, one species of which we usually call fee tail. Tenant in fee simple, or fee absolute, is he that hath lands to hold to him and his heirs forever, generally,

Clark *v.* Baker.

absolutely, and simply without mentioning what heirs, but referring that to his own pleasure or to the disposition of the law."

Now Baker conveyed, by way of security, an estate in lands to Clark; what estate was it? Was it a fee tail? No, it was to him " and his heirs forever, generally, absolutely, and simply." That it is conveyed as security does not affect the question, the question really being, What kind of estate is it that is conveyed by way of security? There can be but one answer; it is the estate provided for in the statute, and consequently the fee afterward acquired by Baker, passed, by force of the statute, to Clark, to be held as security for his debt.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

In August, 1853, Clark being at the time in the occupation of certain premises, situated within the city and county of San Francisco, sold and conveyed them to Baker, for the consideration of one hundred and twenty thousand dollars, and took from him a mortgage upon the property, as security for the payment of the purchase money in ten years, with monthly interest of one thousand dollars, payable each month. The conveyance and mortgage were simultaneous acts, and both purported to be of the premises in fee. With the conveyance, possession was delivered to Baker, and on the same day the mortgage was placed on record. It is admitted, that Clark did not possess at the time the true title to the premises, and it does not appear, that his conveyance contained any covenants of warranty, although it was so understood when the previous opinion of this Court was delivered. The mortgage was also without warranty. Subsequently to its execution, Baker purchased the outstanding title, and gave a mortgage upon the same to Touchard. This last mortgage Touchard foreclosed, making Baker and others, but not Clark, parties to the proceedings. At the sale under the decree, Boyreau became the purchaser, and entered into possession of the premises, and now claims to hold adversely to Clark, and not in subordination to the mortgage previously executed by Baker. Touchard, at the time he received the mortgage to himself, and Boyreau, at the time of his purchase under the decree, had actual notice of the existence of the previous mortgage.

The present suit was instituted to foreclose the mortgage to Clark for the arrears of interest, and to establish and enforce a lien upon the premises for the entire amount of the principal and interest secured. Boyreau answered, setting up, that he held the premises under the true title, acquired by purchase under the mortgage to Touchard. The other defendants, Baker and Touchard, suffered default. The Court held, that the premises were subject to the claim of the plaintiff, as against all the defendants, and decreed a sale of the premises for its satisfaction, it being admitted, that they could not be sold in parcels, without material injury to the parties. From this decree, the defendant, Boyreau, appeals.

It is evident, that as Boyreau derived whatever estate he possessed from Baker, he can assert, as against the mortgage of Clark, no greater rights. The point, then, presented is this: whether Baker, upon the acquisition of the true, that is the legal, title, could impair, by its assertion, the lien of the mortgage upon the premises? Its determination must depend upon the operation given to the deed of mortgage, either by the common law, or the provisions of the 33d Section of the statute concerning conveyances of this State, upon the subsequently acquired title, or the obligations resting upon the mortgagor, from the nature of his contract with the mortgagee.

In considering the operation of the instrument upon the subsequently acquired title, it is immaterial whether we regard the mortgage as a conveyance of a conditional estate, as at common law, or as creating a mere lien or incumbrance, as by the law of this State. Whatever in the instrument, treating it as a conveyance, would operate to transfer a subsequently-acquired title to the grantee, must equally operate, treating the instrument as a lien or incumbrance, to subject such acquired interest to the purposes of the original security. If, in other words, the grantor in the conveyance would be estopped from asserting against his own deed a title subsequently acquired, the mortgagor would be equally estopped from asserting such title against the force of the lien created by his mortgage. If the grantor could not deny that the title passed, the mortgagor could not, that the lien was created.

By the common law, there were only two classes of convey-

ances which were held to operate upon the after-acquired title—those by feoffment, by fine, or by common recovery—and this from their solemnity and publicity, and those by indenture of lease from the implied covenants arising upon such indentures. No other forms of conveyance, in the absence of covenants of warranty, had any effect in transferring the title subsequently acquired. A grant or release only operated upon the estate actually held at the time of its execution by the grantor or releasor. Thus, says Bacon: "It is laid down as a general rule, that a man cannot grant or charge that which he hath not; and, therefore, if a man grant a rent-charge out of the manor of Dale, and in truth he hath not anything in the manor of Dale, and afterward he purchased the manor of Dale, yet he shall hold it discharged." (4 Abridgment, 514.) "And no right," says Littleton, "passeth by a release, but the right which the releasor had at the time of the release made. For if there be father and son, and the father be disseized, and the son (living his father) releaseth by his deed to the disseizor all the right which he hath, or may have, in the same tenements, without clause of warranty, etc. and after the father dieth, etc. the son may lawfully enter upon the possession of the disseizor, for that he had no right in his father's life, but the right descended to him, after the release made, by the death of his father."

Whatever may be the grounds upon which the distinction rests between the operation of a conveyance by feoffment, fine, or common recovery, upon future-acquired estates, and that of a grant or release (and on this point see Butler's Note 231 to Coke upon Littleton,) it is well established and recognized in England. And though in this country conveyances by feoffment, fine, or common recovery, are not in use, no greater effect is given to a grant or a conveyance by bargain and sale, or lease and release, unaccompanied with covenants of warranty, than at the common law under the Statute of Uses. They pass only the estates which are vested in interest at the time, and do not bind or transfer, by way of estoppel, future or contingent estates. Such is the doctrine of the most maturely considered cases, though we admit there are conflicting authorities on the point. Some of the earlier cases in New York would seem to hold, without reference to the existence of a warranty, that where one con-

veyed land, to which he had no title, he was estopped from claiming, as against his deed, any after-acquired estate in the premises, (*Johnson* v. *Bull*, Johns. Cases, 81; *Jackson* v. *Murray*, 12 Id. 201;) but these cases, if going to that extent, were afterward overruled, and the very opposite doctrine has been repeatedly affirmed, and is now the settled law of the State. In *Jackson* v. *M'Crackin*, (14 Johns. 193,) one Boise, by his deed-poll in 1794, describing himself as a late private in the New York Regiment, granted, bargained, sold, and quitclaimed, to the lessor of the plaintiff in fee " all that military right or parcel of land granted to him as bounty lands for his services in the regiment aforesaid during the late war." In 1806, the Legislature authorized the Commissioners of the Land Office to issue a patent to him, for the quantity of two hundred acres, in the tract set apart for the use of the line of the State serving in the army of the United States; and the land was accordingly patented to him. The Judge who tried the cause ruled that the deed from Boise to the lessor of the plaintiff, being prior in date to the patent, did not entitle him to recover. In refusing a motion for a new trial the Supreme Court said: " The deed from Boise to M'Crackin is a bargain and sale, and quitclaim, and he had then no title to convey in the premises; and no title, not then *in esse* would pass unless there was a warranty in the deed; in which last case, it would operate as an estoppel, for avoiding circuity of action." (See, also, *Jackson* v. *Hubble*, 1 Cow. 613; *Jackson* v. *Bradford*, 4 Wend. 622; *Pelletreau* v. *Jackson*, 11 Wend. 110; *Jackson* v. *Waldrow*, 13 Id. 178; *Varick* v. *Edwards*, 11 Paige, 290; *Edwards* v. *Varick*, 5 Denio, 665.)

The same doctrine is recognized by the Supreme Court of New Hampshire, in *Kimball* v. *Blaisdell*, (5 N. H. 533;) by the Supreme Court of Massachusetts, in *Somes* v. *Skinner*, (3 Pick. 47;) and in *Comstock* v. *Smith*, (13 Id. 116;) by the Supreme Court of Connecticut, in *Dart* v. *Dart*, (7 Conn. 250;) by the Supreme Court of Ohio, in *Kinsmore* v. *Loomis*, (11 Ohio, 475,) and by the Court of Appeals, in Virginia, in *Driscoll* v. *Buchanan's Exrs.* (3 Leigh, 365.)

Authorities from other States might be cited to the same effect. These are sufficient to show the general doctrine sustained in the United States. They establish that no estate can

be passed by the ordinary terms of a deed, unaccompanied with covenants of warranty, which is not vested in interest at the time, and that estates subsequently acquired, whether by purchase or descent, are unaffected by such previous conveyance in the hands of the grantor or those claiming under him.

The general doctrine thus stated is, however, subject to this qualification—that where it distinctly appears upon the face of the instrument, without the presence of the covenant of warranty, either by recital or otherwise, that the intent of the parties was to convey and receive reciprocally a certain estate—the grantor will be estopped from denying the operation of the deed according to such intent. Thus in *Van Rensselaer* v. *Kearney*, (11 How. 322,) the Court, after reciting several authorities, said: "The principle, deducible from these authorities, seems to be that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterward denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies.

The reason is, that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it."

From the authorities cited, the conclusion follows that, treating the mortgage merely as a conveyance, the subsequent title acquired by Baker did not, by the common law, inure to the benefit of Clark, the mortgagee. The words of transfer in the mortgage are only those of a common grant, or of a deed of bargain and sale, or lease and release, and are limited, as we have seen, in their effect to the estate possessed at the time;

and the instrument contains no recital or averment evidencing any intention to mortgage any greater estate.

The 33d Section of the Act concerning conveyances changes the rule of the common law as to the effect of deeds under the Statute of Uses, upon subsequently-acquired interests of the grantor, and gives to them an operation equivalent to the most expressive covenant of warranty. That section reads as follows: " If any person shall convey any real estate, by conveyance, purporting to convey the same in fee simple absolute, and shall not, at the time of such conveyance, have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be valid, as if such legal estate had been in the grantor at the time of the conveyance." A deed with a covenant of warranty operates upon future acquired interest, not as in fact passing such interest, but by way of estoppel upon the grantor against its assertion. He is not permitted to attack a title the validity of which he has covenanted to maintain. If he could succeed in defeating the title, he would, by his success, immediately become liable to the grantee upon his covenant; and hence, to avoid circuity of action and to enforce complete justice without delay and further litigation, the doctrine of estoppel is applied. The section cited from the statute of this State goes beyond the usual covenant of warranty; it provides that the new estate " shall immediately pass to the grantee," and that the conveyance shall be as valid as if such estate had been in the grantor at the time of the execution. The effect, then, of its provisions upon a conveyance of premises in fee— such, for example, as that of Clark to Baker—is the same as if it were written upon its face that the grantor conveyed all the estate which he then possessed, or which he might at any time thereafter acquire. Had Clark, after his conveyance to Baker, purchased the outstanding title, it would, under the statute, immediately have inured to the benefit of his grantee.

The section applies to mortgages equally as to conveyances, absolute in their form. The 36th Section of the same statute expressly provides that the term " conveyance " as used in the Act, shall be construed " to embrace any instrument in writing by which any real estate or interest in real estate is created,

aliened, *mortgaged*, or assigned, except wills, leases for a term not exceeding one year, executory contracts for the sale or purchase of lands, and powers of attorney." If we substitute the terms "mortgage" and "to mortgage" for their corresponding words in the section, all doubt as to the application of its provisions to the case at bar will at once disappear. The section will then read as follows: "If any person shall *mortgage* any real estate, by *mortgage* purporting to *mortgage* the same in fee simple absolute, and shall not at the time of such *mortgage* have the legal estate in such real estate, but shall afterward acquire the same, the legal estate subsequently acquired shall immediately pass to the *mortgagee*, and such *mortgage* shall be valid as if such legal estate had been in the *mortgagor* at the time of the *mortgage.*" The terms "fee simple absolute" are used to denote an estate of inheritance conveyed or mortgaged. The word "absolute" adds nothing to the force of the preceding terms "fee simple"— which of themselves express the highest interest one can possess in land. "Estates of inheritance," says Blackstone, "are divided into inheritances absolute or fee simple, and inheritances limited, one species of which we usually call fee tail. Tenant in fee simple or fee absolute, is he that hath lands to hold to him and his heirs forever, generally, absolutely, and simply, without mentioning what heirs, but referring that to his own pleasure, or to the disposition of the law." (2 Com. 104.)

No stress can be placed upon the language "that the estate subsequently acquired shall immediately *pass* to the grantee," as limiting the provisions of the section to conveyances which are absolute in form. A mortgage is in form a conveyance— and though upon the application of equitable doctrines, and upon the construction of Section 260 of the Practice Act, passed in 1851—the instrument is regarded in this State as creating a mere lien or incumbrance, it yet operates upon the estate for the purposes of the security. The statute only intends by the language in question, to provide that the subsequently-acquired estate shall be as completely covered by the instrument, whether conveyance or mortgage, as if originally possessed by the grantor or mortgagor.

It follows from our construction of this section, that by virtue of its provisions, the title subsequently acquired by Baker in-

ured to the benefit of his mortgagee, as much so as if that title had been originally possessed by him. Clark conveyed the premises in fee; Baker mortgaged them back in fee, and under the statute, whatever title either subsequently acquired, instantly inured to the benefit of the other. The Appellant, Boyreau, standing in Baker's shoes, possessing only what Baker possessed after Clark's lien was satisfied, cannot question Clark's right to the relief he seeks, and can only claim in subordination to him.

There is another consideration growing out of the nature of the contract of mortgage, which must lead practically to the same result. In the former part of this opinion we treated the mortgage as an ordinary conveyance—and held that, regarded in that light, it did not operate, by the rules of the common law, upon the subsequently-acquired title, as it did not contain a clause of warranty, or other evidence, by recital or averment, of any intention to pass a greater estate than already possessed at the time.

There is, however, an obligation resting upon the mortgagor, from the nature of his contract, which does not rest upon the vendor. The mortgagor holds a very different relation to the mortgagee from that of a vendor to a vendee. By the execution of a conveyance without warranty, all relations between vendor and vendee are dissolved. They henceforth hold one another at arm's length, as they do the rest of the world. The dealing between them is completed—nothing further remains to be done. The reverse is the case between mortgagor and mortgagee. By the execution of the mortgage, the transaction between them is only begun. Every substantial part remains to be performed. The mortgagee is to return to the mortgagor the estate, and the mortgagor is to return to the mortgagee the money and interest secured; and until this is consummated, the obligation rests upon both to do nothing which can impair the rights of the other, or embarrass their enforcement.

The mortgagor cannot waste or destroy the estate, property, or thing—whatever it may be—which he pledges as security. He cannot sell it, or give it away, so as to discharge the lien, He cannot do anything which shall deprive the party, whose

money is taken, from recourse upon the property, according to the terms of the contract. He is allowed, under the law of this State, to retain the possession of the property against the form of his contract, but upon the trust necessarily implied that he will not do or permit any act to lessen the sufficiency of the original security. He will not, says Story: "Be permitted to do any acts injurious to, or diminishing, the security of the mortgagee, and if he should commit, or attempt to commit, acts of waste, he will be restrained therefrom by the process of injunction." (2 Equity Jurisp. Sec. 1011; *Brady* v. *Waldron et al.* 2 John. Ch. 148.) On the other hand, the mortgagee can do nothing to impose burdens upon the enforcement of the equity of redemption. "The mortgagee has not a right," says Lord Langdale, in *Sandon* v. *Hooper*, (6 Beavan, 246,) "to make it more expensive for the mortgagor to redeem than may be required for the purpose of keeping the property in a proper state of repair, and for protecting the title to the property."

It is difficult to state with precision the exact nature of the relation of a mortgagor in possession to the mortgagee. "He has," says Hilliard, "been called tenant at will, *quasi* tenant at will, tenant at sufferance, agent, servant, and receiver of the mortgagee; but objections have been made to each of these titles, upon the ground that in some one or more particulars the rights and duties of a mortgagor differ from those of either of the persons above named. Thus, he is said to want the chief characteristic of a tenant, which is the payment of rent; of an agent, in not being liable to account; and of a servant, inasmuch as the mortgagee has never had possession." (1 Hill. on Mortgages, 119.) "One is much at loss," says Patteson, J. in *Doe* v. *Williams*, (5 Adol. & Ellis, 297,) "as to the proper terms in which to describe the relation of mortgagor in possession, and mortgagee." It is sufficient, in the present case, to observe that the relation is one which requires him to preserve the property for the purposes of the security for which it was originally pledged; and hence, to insure good faith and fair dealing, he is forever precluded from denying the existence of the lien which he has attempted to create, or defeating its enforcement against the property upon which it was placed. In the case at bar, the mortgage is upon the property, and not upon any particular es-

41

tate therein, or right thereto. It is the property itself which Baker has pledged, and it is the property itself which he has promised, by his contract, to preserve for the purposes of the security; and equity will not suffer him, in violation of good faith, by any act, to impair or destroy the security. Any claim or outstanding title he may have purchased only went to strengthen his own title to the premises, and hence, through him, to give possibly greater value to the security. It does not appear that Clark ever desired the claim or title to be bought in, and had Baker been, at the time of his purchase, ignorant of the true state of the title, and been imposed upon in the matter, he could have applied to a Court of Equity for relief, upon a surrender of possession. Not having done so, he cannot, and those claiming under him cannot, set up, to defeat the mortgage, the title thus voluntarily purchased. (See *Tartar* v. *Hall*, 3 Cal. 263; *Van Waggoner* v. *McEwen et al.* 1 Greenl. Ch. 412; 1 Powell on Mortg. 190; *Holdridge* v. *Gillespie*, 2 Johns. Ch. 30; *Doe* v. *Vickers*, 4 Adol. & Ellis, 782; *Banks* v. *Walker*, 2 Sand. Ch. 344.)

Judgment affirmed.