[No. 2,956.]

# THE VALLEJO LAND ASSOCIATION *v.* ELIAS VIERA.

MORTGAGE IN FEE.—A mortgage in fee is, for the purposes of the statute which provides that if any person shall convey any real estate by conveyance, purporting to convey the same in fee simple, an estate subsequently acquired by the grantor shall pass to the grantee, a conveyance in fee.

DECREE ENFORCING MORTGAGE.—When the mortgage conveys the estate in fee simple absolute, a decree enforcing the same is, in effect, a decree that the estate vested in the mortgagor at the date of the mortgage, as well as that which shall at any time come to him, be sold, and the Sheriff's deed to the purchaser operates to transfer to such purchaser the estate so directed to be sold.

SHERIFF'S DEED ON MORTGAGE SALE.—The rule that a Sheriff's deed, delivered upon execution sale, transfers to the grantee only such estate as, at the time of sale, was held by the defendant in the execution, has no application to a Sheriff's deed made under a decree enforcing a mortgage in fee.

ESTOPPEL BY MORTGAGE—A mortgagor, who mortgages in fee, is estopped from denying that the estate mortgaged was other or less than an estate in fee simple.

MERGER OF MORTGAGE IN DECREE.—A mortgage, although in some sense merged in the decree, remains a muniment of the title which passes to the purchser at the mortgage sale, to be looked to, not only for the purpose of ascertaining the time at which the mortgage lien attached, but also (in the absence of express directions in the decree limiting the estate to be sold) the estate conveyed by way of mortgage.

APPEAL from the District Court, Fifteenth Judicial District, County of Contra Costa.

Ejectment to recover about one hundred and twenty-six acres of land, part of the so-called Suscol Ranch, in the county of Solano. M. G. Vallejo claimed about eighteen leagues of land, called the Suscol Rancho, under an alleged Mexican grant, but the Supreme Court of the United States, in 1862, rejected the grant, and the land became a part of the public domain. (See *United States* v. *Vallejo*, 1 Black. 541.) Vallejo, before this rejection, had sold the land, or a great portion thereof, to parties who had enclosed and improved the same. Congress, on the 3d of March, 1863 (12 U. S. Statutes at Large,

p. 808), passed an Act, by which those who had purchased from Vallejo, or his assigns, were allowed to preëmpt and purchase from the United States the land to the extent to which they had reduced the same to possession at the time of the decision. The demanded premises were conveyed by Vallejo to J. B. Frisbie, and by Frisbie to the defendant, by deed bearing date September 1, 1861. Viera entered into possession, and afterwards preëmpted and purchased under said Act of Congress, and received his patent from the United States in the spring of 1867. When Viera bought of Frisbie, he gave the latter a mortgage, to secure a part of the purchase-money. Frisbie assigned the mortgage to F. D. Atherton, who, on the 19th day of December, 1862, obtained a decree enforcing the same. The decree merely directed the Sheriff to sell the premises, or so much thereof as might be necessary, with the usual other clauses in such decrees. Under this decree, the Sheriff sold, and Atherton became the purchaser, and the Sheriff gave him a deed on the 31st day of July, 1865. Atherton sold to Frisbie, October 10, 1865, and Frisbie conveyed to the plaintiff, December 1, 1868. The plaintiff was a corporation. October 2, 1865, the defendant took a lease of the premises from Atherton for the term of two years and eleven months. He remained in possession from the time he purchased from Frisbie. The plaintiff recovered judgment and the defendant appealed.

The other facts are stated in the opinion.

*John Currey* and *M. A. Wheaton,* for the Appellant.

The plaintiff claims that the title acquired by the defendant in 1867, by virtue of his patents, has passed to, and vested in the plaintiff by operation of law, and this on account of the mortgage made and foreclosed, whilst the title remained in the government.

It will be admitted, we presume, or if it is not, it is well established by authority in California, that without our statute, none of the forms of conveyance now in use, unaccompanied by covenants of warranty, would operate to pass an after-acquired title.

"They pass only the estates which are invested in interest at the time, and do not bind or transfer, by way of estoppel, future or contingent estates." (*Clark* v. *Baker*, 14 Cal. pp. 627, 628, 629, and the numerous authorities there cited.)

Here, the execution of the mortgage, its foreclosure and the Sheriff's deed were all before the title was acquired from the government. That the mortgage operated upon whatever Viera had or owned in the land at the time it was executed and foreclosed, we will not dispute, but that it operated to pass any title acquired subsequently, and after the date of the Sheriff's deed, we deny.

At the date of the foreclosure, Viera had no inchoate rights; the Suscol Act had not been passed, giving him permission to preëmpt this land. The foreclosure was in December, 1862, and the possession, by virtue of which he preëmpted, was in February, 1862, but the right to preëmpt on account of that possession did not attach until the date of the Suscol Act, March 3d, 1863.

The thirty-third section of our Statute of Conveyances operates to pass an after-acquired title to the grantee in a deed where the grantor purports to convey the land in fee-simple absolute, not having the legal estate, but afterwards acquires it. And we are aware that this section has been construed to embrace a mortgage so far as to prevent the mortgagor from setting up an after-acquired title to defeat the enforcement by foreclosure of the lien created by the mortgage. But it has never been claimed, even so far as we know, that it would prevent the mortgagor from setting up and holding title acquired after foreclosure.

The real question is, does a Sheriff's deed, following a foreclosure of a mortgage, operate to pass and after-acquired title? That a Sheriff's deed does not pass an after-acquired title, and that the thirty-third section of our Statute of Conveyances has no application to such a deed, has been held in several recent cases in this Court. (*Montgomery* v. *Whiting*, 4 Cal. 293-4; *Kenyon* v. *Quinn*, 41 Cal. 325, and *Emerson* v. *Sansome*, 41 Cal. 552.)

These cases establish, beyond question, the rule of this

Court in reference to the effect of a Sheriff's deed or the title of a judgment-debtor, where it follows a sale under execution. The deed, in such cases, passes the title held by the judgment-debtor at the date of the levy of the execution, and that acquired subsequently and before the sale, but the judgment-debtor is not precluded from afterwards acquiring and holding title adverse to that passed by the deed.

But the plaintiff here assumes that a Sheriff's deed following a mortgage and foreclosure carries with it something more than an ordinary Sheriff's deed, that it has some peculiar attribute derived from the mortgage itself. We fail to see the distinction. The sale is preceded by a lien created by the mortgage in the one case, and by a lien created by a judgment, duly docketed, or execution levied in the other case; and in neither case does the lien operate to change title before the sale.

"A mortgage creates a specific lien on the land mortgaged, as a judgment duly docketed, does a general one, on the land of the judgment-debtor. But the mortgagee, as such, has no title to the land mortgaged; he has neither *jus in re* nor *ad rem*, but a mere security for his debt; title to the land, nothwithstanding, remaining in the mortgagor." (*McMillan* v. *Richards*, 9 Cal. 409; see, also, pp. 410, 411, 412.)

"The estate of the mortgagor and of the judgment-debtor, after the sale, stand upon the same footing. &ast;&ast;&ast;&ast;&ast;&ast; The decisions as to the estate of the judgment-debtor, after sale, become, therefore, authorities for determining the estate of the mortgagor, after sale, under decree." (Id. 412.) In both cases, the title, whatever it is, remains in the mortgagor or judgment-debtor, until the deed passes it, and it only passes title then vested.

In *San Francisco* v. *Lawton*, (18 Cal. 465,) the effect of a mortgage upon an after-acquired title is fully discussed, and it is there held, after reviewing the case of *Clark* v. *Baker*, (14 Cal.) (Judge FIELD wrote the opinion in both cases,) that a mortgage operates, except in a single instance, only upon the estate mortgaged, or held by the

mortgagor at the date of the mortgage. The exception is, where the mortgagor, after the execution of the mortgage, but before foreclosure, acquires additional title, which inures, by way of estoppel, to the benefit of the mortgagee; and, in that case, the sale under the foreclosure decree, passes the title to the same extent as if originally held by the mortgagor.

Indeed, so far as we have been able to learn, it has never before been claimed in this Court that a mortgage or decree, and foreclosure under it, could, by any possibility, pass any title not in the mortgagor at the time of foreclosure and date of the Sheriff's deed.

The very able counsel who argued the case of *Clark* v. *Baker*, in this Court, whilst contending for the doctrine that the mortgage operated to convey an after-acquired title, say, " if obtained before foreclosure," thereby showing that they did not even pretend that such would be the case, if the title had been acquired subsequent to foreclosure and sale. (14 Cal. p. 621.)

There is no warranty of title in the mortgage. (*Peabody* v. *Phelps*, 9 Cal. 228.) " What is sold is not the interest of the mortgagee, but the estate of the mortgagor." (*Haffley* v. *Maier*, 13 Cal.) " Where a decree of foreclosure is rendered, the contract ceases, being merged in the decree." (*Aldrich* v. *Sharp*, 3 Scam. 261; *Wayman* v. *Cochrane*, 25 Ill. 152; *Hobby* v. *Pemberton*, Dudl. Geo. 212.)

*W. H. Wells, S. G. Hilborn* and *Beatty & Denson,* for the Respondent.

The mortgage in this case purports to convey the land in dispute in fee simple absolute, with an ordinary defeasance, as is usual in mortgages. Under the terms of this mortgage any after-acquired title (if indeed Viera did not at the time have title) would pass to the mortgagee or the person purchasing at the mortgage sale. (See *Clark* v. *Baker*, 14 Cal. 618.)

This mortgage, by operation of law, is a mortgage with full warranty of title. And the warranty in the mortgage

is, according to the decision in the above quoted case, to have the same effect as if in a deed. But, says the appellant, this implied warrantee is to have full and complete effect as long as the mortgage is in force; but when the mortgage is merged in a judgment and sale, then the warranty ceases to have any operation. In effect, when a mortgagor warrants the title to land he is mortgaging, he only warrants the title for his own benefit, not that of the mortgagee. As long as the title is in the mortgagor the warranty is good. When the mortgagee enforces his lien and vests the title in himself by purchase at Sheriff's sale, the covenant is gone. This doctrine is certainly a novel one. It is the case of a man making a deed of warranty directly to himself. "I, A. B., bargain, sell and convey Black Acre to myself; covenant with myself to warrant and defend the title in myself forever; but upon express condition that this covenant shall not run with the land to any holder by descent or purchase from myself." The value of such a deed we are unable to appreciate.

Whatever covenants of warranty are contained in a mortgage pass under a decree of foreclosure to the purchaser at Sheriff's sale, whether that purchaser be the mortgagee or another. (*Andrus* v. *Walcot*, 16 Barb. 21; *McCrady* v. *Brisbain*, 13 Ind. 193; *Tufts* v. *Andrus*, 1 N. & McC. 104; 8 Pick. 547.)

By the Court, WALLACE, C. J.:

The action is ejectment, and the premises sued for are a portion of the Suscol Ranch. The asserted legal title of the plaintiff originates in a Sheriff's deed, delivered in 1865 to a purchaser at a judicial sale held upon a decree of foreclosure, regularly entered in an action instituted against the defendant here. The decree was founded upon a mortgage deed executed by the defendant to Frisbie in 1861, to secure a balance of unpaid purchase-money—the defendant, at the time, receiving from the mortgagee a conveyance whereby he obtained the asserted title of General Vallejo to the mortgaged premises.

In February, 1862, this title of Vallejo was finally rejected in the Supreme Court of the United States, and in the following month of December the decree of foreclosure was entered against the defendant, directing that the mortgaged premises be sold to satisfy the principal debt owing by the defendant, with the interest accrued thereon, and that the purchaser receive a Sheriff's deed, and be let into possession, etc. In 1863 Congress passed the Act for the relief of the purchasers from Vallejo, and in 1867 the defendant, under the provisions of that Act, as being a purchaser from Vallejo, and in possession when the title of the latter was rejected, obtained for himself the patent from the United States, purporting to convey to him the premises in controversy; and he now relies upon this patent as vesting in him the legal title, in defense of the present action. The mortgage-deed delivered by the defendant, and through the foreclosure of which the plaintiff's title comes, purports, upon its face, to convey the premises by way of mortgage in fee; its language is: "Hath granted, bargained, sold, aliened, released, conveyed and confirmed, and by these presents doth grant, bargain, sell, alien, release, convey and confirm unto the said party of the second part, and to his heirs and assigns forever, all that certain piece or parcel of land, situate," etc.

The action, as we have remarked already, is ejectment, and the legal title must, of course, prevail. It is conceded that the legal title is that title which is derived through the patent of the United States of the year 1867, running to the defendant Viera on its face; and the general question for determination is, whether, in point of law, that title is, under the circumstances, to be considered as vested in the plaintiff or in the defendant.

The thirty-third section of the statute of this State concerning conveyances is as follows: "If any person shall convey any real estate by conveyance purporting to convey the same in fee simple absolute, and shall not, at the time of such conveyance, have the legal estate in such real estate, but shall afterward acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee,

and such conveyance shall be valid as if such legal estate had .been in the grantor at the time of the conveyance." The thirty-sixth section of the same Act provides that the term "conveyance," as used in the Act, shall be construed to embrace any instrument in writing by which any real estate or interest in real estate is created, aliened, mortgaged or assigned, with certain exceptions not material now to notice.

In short, a mortgage in fee is, for the purposes of the statute, a conveyance in fee. It was so held in *Clark* v. *Baker,* (14 Cal. 612,) when the question was first presented for consideration, and the ruling in that case has been followed here in the subsequent cases in which the point was involved. (*Clark* v. *Boyreau,* 14 Id. 634; *San Francisco* v. *Lawton,* 18 Id. 465; *Kirkaldie* v. *Larrabee,* 31 Id. 455.) The mortgage-deed to Frisbie, purporting, as it does, to convey the fee, is to be read as if it were written upon its face that the mortgagor, Viera, thereby mortgaged not only all the estate which he then held in the mortgaged premises, but all the estate therein which he might at any time thereafter acquire. (*Clark* v. *Baker, supra* 630.) This interpretation of 'the statute is made necessary, in order to give force to its provisions, that "such conveyance shall be valid as if such legal estate had been in the grantor at the time of the conveyance," and to its further provision that the legal estate subsequently acquired by the grantor "shall immediately pass to the grantee." The consequence attributed by the statute to a conveyance in fee by way of mortgagé is, as against the grantor and his privies, similar to that following upon a fine levied at common law, when resorted to as a mode of assurance, which operated to transfer to the conusee the entire estate, present or future, vested or contingent.

Upon this view it follows that the decree of foreclosure entered upon the mortgage executed by Viera, and directing a sale of the mortgaged premises, was, in effect, a decree, that the estate of the mortgagor in those premises, vested in him at the time of the execution of the mortgage, or which should at any time thereafter come to him, be sold

to satisfy the mortgage debt, and that the Sheriff's deed, delivered to the purchaser at the sale, operated a transfer of the estate so directed to be sold. The mortgage-deed, though in some sense merged in the decree, remains a muniment of the title which passed to the purchaser at the mortgage sale, and to be looked to, not only for the purpose of ascertaining the point of time at which the mortgage lien attached, but also (in the absence of express directions in the decree limiting the estate to be sold) the estate purporting thereby to have been conveyed by way of mortgage, as being in fee or otherwise.

The rule that a Sheriff's deed delivered upon execution sale imports no warranty of title, but transfers to the purchaser only such estate as was held at the time by the defendant in execution, has no practical application to a Sheriff's deed delivered upon foreclosure of a mortgage in fee; for, as we have seen already, the defendant in the latter case must continue to be estopped, by the terms of the mortgage-deed itself, to deny that the estate was other or less than an estate in fee in the premises. These terms, importing a conveyance of the fee, are equivalent to a covenant of general warranty of title running with the land. We are, therefore, of opinion that the plaintiff is vested with the legal title to the premises in controversy, and that the judgment below should be affirmed.

This view renders it unnecessary to consider the questions made upon the effect of the lease of the premises afterwards accepted by the defendant from Atherton, the purchaser at the foreclosure sale.

Judgment and order denying a new trial affirmed.

Mr. Justice RHODES dissented.