### C. M. EULISS v. JOSEPH McADAMS.

*Deeds—Description—Parol Evidence to Locate Boundaries—Surveyor—Junior Deed.*

1. Designating land by the name it is called is a sufficient description to enable its location to be determined by parol proof.

2. Reference to one deed in another for purpose of description is equivalent to incorporating and setting out its description in full.

3. For the purpose of showing lines and boundaries it is competent to show where the Surveyor actually ran.

4. A junior deed is not competent to establish the corner of a tract decribed in an older deed.

This was a CIVIL ACTION, brought to recover damage for trespass and involving title, tried at Fall Term, 1890, of the Superior Court of ALAMANCE County, before *MacRae, J.*

The descriptions contained in the deeds offered by the plaintiff to show title are set forth in the opinion. The defendant contended that the deeds were void for uncertainty in all of the descriptions.

It was admitted that defendant owned the land joining this tract, and while the plaintiff was required to prove his title, the main contention between the parties was as to the location of their adjoining lines, as will appear by the plat attached to the record.

Plaintiff also offered a deed from D. W. Huffman and wife to defendant for 105 acres, 8th of April, 1870, and another deed from same to same for 100 acres, more or less, 21st March, 1874, and a grant to William Mebane for 400 acres, March, 1795, and a deed from John Huffman to Daniel Huffman in 1808, and much testimony as to the location of defendant's land, for the purpose of establishing, as a façt, that the defendant's land stopped at X on the plat, and not at Y, as claimed by defendant.

The defendant, during the cross-examination of one of plaintiff's witnesses, offered a grant to Benj. Rainy, 1799; and a deed from Benj. Rainy to Neill B. Rose, 1807; and a deed from William Mebane to Jos. Murray, 1799; and a deed from Wm. Mebane to Thos. Cole, 1796; and a deed from Thomas Cole to John Huffman, 1797; and a deed from John Huffman to Daniel Huffman, 1808; and the will of Daniel Huffman, devising to John Huffman the same land, and the two deeds offered by plaintiff Huffman to McAdams; all of these for the purpose of locating defendant's land.

John J. Trollinger was examined as a witness by plaintiff for the purpose of locating defendant's south-west corner at X instead of at Y, and testified that at one time he had owned the land lying to the west of the defendant; that he understood that Sellars' land joined his (witness'); that Jeffries now owns the land which witness formerly owned; that Jeffries' corner is the same as witness' corner was, though witness

does not know where Jeffries claims to; that Jeffries bought from the Holts the land witness owned—no more and no less; all that witness owned was conveyed to Holt.

Defendant then proposed to offer a deed from Holt to Jeffries, in 1887, to locate this corner.

Objected to by the plaintiff, upon the ground that this deed was junior to plaintiff's deed and could not be offered to locate an older tract. Objection sustained. Defendant excepted.

After much evidence on both sides, the defendant offered a deed from Murray, Sheriff, to E. M. Holt for the Jeffries land, 10th of January, 1872, for the purpose of locating the Jeffries corner at Y, and by this means locate defendant's corner at Y. Defendant's deed for this tract was dated 1870.

Plaintiff objected, because an older deed cannot be located by a junior. Objection sustained. Defendant excepted.

The jury found the issues in favor of the plaintiff.

Rule for new trial for errors alleged. Rule discharged. Judgment for plaintiff. Defendant appealed.

*Mr. J. A. Long*, for plaintiff.
*Messrs. F. H. Whitaker* and *L. M. Scott* (by brief), for defendant.

AVERY, J.—after stating the facts: The plaintiff offered two deeds, the first from A. Murray and wife to the Falls of Neuse Manufacturing Company, and the second from W. J. Murray and wife to the same company. The defendant objected to the introduction of both, on the ground that the descriptive clauses were too vague to admit of explanation by extrinsic evidence.

The descriptions were, respectively, in the following words:

*First.* "A tract of land in Alamance County, State of North Carolina, adjoining the lands of John Staley, David Staley and Joseph McAdams, *known as the Sellars* tract, subject to

whatever rights the widow Sellars may have in it, containing one hundred and forty acres, more or less."

*Second.* Seven tracts, or interest in seven tracts, conveyed by one deed, as follows: "The following tracts of land in Alamance County, State of North Carolina, *their dwelling-house* and *the land on which the same is situated,* containing about eight acres, more or less, adjoining Big Falls Water-power lands, and the lands heretofore owned by Albert Murray, *being the place* on which we now reside. *For a more specific description reference is made to our title papers.*

"Also, our undivided half of the following lands, situate in said county of Alamance, to-wit:

"1. *The John Dixon tract,* containing about one hundred and thirty acres, more or less, adjoining the lands of Austin Isley, Jesse Rippey, Jesse Grant and others;

"2. *The Long tract,* containing about one hundred and ten acres, more or less, situated on the east side of Haw River, adjoining the lands of W. T. Wilkins, Mrs. Kirkpatrick and others;

"3. *The Sellars tract,* containing about one hundred and sixteen acres, more or less, situated on the south-west side of Haw River, adjoining the lands of Joseph McAdams, John Staley and others;

"4. *The Staley tract,* containing twenty-seven acres, more or less, adjoining the lands of Mebane Morrow, Joseph McAdams and others.

"Tracts number three and four above named are subject to the dower rights, if any, which the widow Nancy Sellars may have therein.

"5. A tract containing about six acres, *called Morrow tract, for which an exchange was made with Mebane Morrow.*

"6. And also *their interest, being a half interest, in all their lands lying between Haw River and Stony Creek, up to the line* of J. H. and W. E Holt & Co., including the Big Falls Water-power and Mills, and all the rights, privileges and appurte-

nances thereto belonging, *which lands were heretofore owned*
by W. J. and A. Murray, as partners and tenants in com-
mon, and also all of the rights, privileges and interests of
said W. J. Murray, whether as co partners or tenants in com-
mon or in his own right, in and to the bed of Haw River
and Stony Creek, or either of them, and the waters thereof.
For a more particular description of tracts one, two, three
four, five and six, reference is hereby made to the title papers
therefor to W. J. Murray and W. J. and A. Murray."

The descriptive words, " known as the Sellars tract " (omit-
ting as surplusage the residue of the description), pointed
with sufficient certainty to possible proof of the existence
and location of a body of land which, according to general
reputation, was so designated, and rendered parol proof com-
petent to fit it to the thing. *Henly* v. *Wilson,* 81 N. C., 405;
*Smith* v. *Low,* 2 Ired., 457. In the case last cited, Chief
Justice RUFFIN says that, by the description " Mount Vernon,
the late residence of General Washington," the place referred
to is better known than by setting forth the metes and bounds
of the tract on which his dwelling-house was located.

   A reference to the title papers of the grantors in the other
deed from William J. Murray and wife, is equivalent to
incorporating the full descriptions set forth in the papers
referred to in the former deed, and, of course, made the con-
veyance mentioned, together with competent evidence to
locate the land aliened by them, competent. *Everitt* v.
*Thomas,* 1 Ired., 252. It is unnecessary, in order to settle
the question of law whether this part of the deed is void
for vagueness, that we should go further and pass upon the
sufficiency of the additional designations, as "their dwell-
ing-house and the land on which the same is situated," etc.,
or " the place on which we now reside." *Carson* v. *Ray,* 7
Jones, 610; *Murdock* v. *Anderson,* 4 Jones' Eq., 77.

The descriptive words, *"the John Dixon tract," "the Long
tract," "the Sellars tract,"* and the *"Staley tract,"* used in the

second deed, were sufficient to point to proof *aliunde* that these di-tinct bodies of land were generally known by such designations. *Smith* v. *Low, supra; Scull* v. *Pruden,* 92 N. C., 168; *Henly* v. *Wilson, supra.* Evidence was unquestionably admissible, not only to show the location of the tract "called the Morrow tract," but to identify the boundaries by a deed of exchange from Mebane Morrow and to consider such metes and bounds as if they were incorporated into the descriptive clause of the deed from W. J. Murray and wife. *Henly* v. *Wilson, supra; Everitt* v. *Thomas, supra.*

The description numbered six, is not too indefinite, because it was competent for the plaintiff, under its terms, to identify the land as lying *between* Haw River and Stony Creek, and extending up to the lines of J. H. and W. E. Holt & Co., so as to include the Big Falls Water-power. *Horton* v. *Cook,* 1 Jones' Eq., 270.

The further designation of the land as that "owned by W. J. Murray and A. Murray, as partners and tenants in common," together with the reference to title papers, which follows and applies to all of the tracts numbered from one to six, opens the door for the admission of testimony to identify the land lying between those rivers by written evidences tracing title to the two Murrays as tenants in common. It was likewise competent to show title as tenants in common, or sole seizin for the beds of Haw River and Stony Creek in W. J. Murray, all title and interests in these localities proven to have been in him, having passed, by the deed, to the Falls of Neuse Company.

The Judge states that the plaintiff offered the testimony of several witnesses tending to prove his contention as to the location of the land claimed by him, and as to the alleged trespass; but this evidence is not set forth in detail in the statement. The defendant did not except, in the Court below, to the sufficiency of the whole of the testimony to go to the jury, as tending to fit any or all of the descriptions to the

land claimed by the plaintiff, and to show it to be identical with that described in the complaint. We cannot, therefore, consider the exception raised here, for the first time, that the evidence was not, in fact, sufficient to locate the land. With notice of such an assignment of error, we assume that the Judge would have sent up much additional testimony bearing upon this question. *McKinnon* v. *Morrison*, 104 N. C., 357.

We find in the brief of the defendant some statements in conflict with those in the case on appeal, and much addenda to the record, which, of course, we cannot consider. The case on appeal states that the defendant purposed to offer a deed from Holt to Jeffries, dated in 1887, to locate his south-west corner, and not, as contended by defendant, simply to contradict Trollinger. It is competent to establish the lines and courses of a tract of land by showing where the surveyor actually ran when making the boundaries at the instance of the parties to the conveyance, and with a view to its execution, as it is to locate a patent by showing marks, corresponding in age and course with the calls of the deed, upon a line of trees. *Ingram* v. *Colson*, 3 Dev., 520; *Topping* v. *Saddler*, 5 Jones, 357; *Roberts* v. *Preston*, 100 N. C., 248. But the junior deed from Holt to Jeffries, dated in 1887, was not competent as evidence to locate the corner of the deed previously made to the plaintiff. *Sasser* v. *Herring*, 3 Dev., 341. The objection of the plaintiff is based upon the ground of incompetency, as evidence of the location of the corner, of an older deed. It is too late to set up other grounds of exception in this Court.

There is no error in either of the rulings of the Court excepted to, and the judgment must be affirmed.

Affirmed.