## TILTON v. FLORMANN et al.

Appellant, not controverting respondents' statement in their additional abstract that, about eight months after the bill of exceptions was settled, the circuit court permitted it to be amended over respondents' objection and without good cause or any cause being shown, by specifications of the particulars on which the evidence is insufficient to support the findings, the statement must be taken as true, and the specifications will be stricken from the record and disregarded so far as not set forth in the original bill of exceptions; the amendment having the effect of settling a new bill of exceptions after the time allowed by law, in the absence of good cause shown

and without fixing a new time for settlement of the bill as provided by Rev. Code Civ. Proc. § 306.

Appellant, having made specific objection at the trial to the admission of evidence, cannot show on appeal that the evidence was objectionable on another ground.

Plaintiff claimed land under a federal patent issued in 1887 and mesne conveyances. Defendant claims title by adverse possession since abandonment of the land by a mining company and introduced a record of a placer mining location certificate dated in 1884, under which defendant and his co-locators claimed lands, deeds from the co-locators to F., and a deed from F. to T. and L., and from them to a mill company, which conveyed to the mining company. The land was not specifically described in the certificate, and defendant was allowed to testify that the location certificate covered the land in controversy, that the land covered by the certificatel was that conveyed by his co-locaors to F. and by F. to T. and L., that F. did not have any other land than that covered by the certificate, that the mill company never claimed any other land than that covered by the certificate, that the company put improvements on the land, that the company operated the property during parts of 1884 and 1885, that the mill on the land was destroyed in 1892, that up to that time the land had not been "jumped," that defendant's wife took possession in 1887, and that she improved the land. **Held**, that the evidence on defendant's part was not objectionable as immaterial to the issues, nor because the matters covered by it occurred before the patent issued, nor as being an attempt in a collateral proceeding to attack the patent; the object of the evidence being to show the identity of the land, and all the facts and circumstances showing the relation of the parties to the land being proper.

Evidence in ejectment **held** to sustain findings that the land in controversy was conveyed by particular deeds relied upon by defendant before issuance of the patent under which plaintiff claims.

Under the express terms of Civ. Code Cal. § 947, subd. 4, and under the common law, title apparently conveyed by federal patent to plaintiff's remote grantor passed to those claiming under the remote grantor's warranty deed delivered before the deed under which plaintiff claims, and no title passed by the last-named deed.

Civ. Code Cal. § 947, subd. 4, providing that, where one purports by proper instrument to convey land in fee simple, after-acquired title passes by operation of law to his grantee or successors, modifies the common-law rule by omitting the qualifications that the deed carrying the after-acquired title must be a full covenant warranty deed and by providing for the passing of such title by operation of law, instead of estoppel.

A grantee of land has constructive notice of any prior duly acknowledged and recorded conveyance by his grantor, whereby the grantor purported to convey a fee-simple title, and that by such con-

veyance, though the grantor may not have had any title when it was executed, his after-acquired title will pass to the prior grantees.

If plaintiff, who claims under a deed executed by his remote grantor after receiving a federal patent, had any doubt as to the land conveyed to another by a deed executed before the patent issued being the same covered by the patent, he was bound to inquire as to the identity of the land.

Fuller, J., dissenting.

(Opinion filed, July 22, 1908.)

Appeal from Circuit Court, Lawrence County. Hon. W. G. Rice, Judge.

Action by Samuel Tilton against Charles Flormann and another. From a judgment dismissing the action, and from a denial of a new trial, plaintiff appeals. Affirmed.

*A. K. Gardner* and *Samuel C. Polley,* for appellant. *Eben W. Martin* and *Norman T. Mason,* for respondents.

CORSON, J. This is an appeal by the plaintiff from a judgment in favor of defendant and order denying a new trial. The action was instituted by the plaintiff to recover from the defendant the possession of a mining claim, known as the "M. C. Lot No. 403," situated in Greenwood Mining district, Lawrence county, embracing 84.22 acres, and also to cancel a tax deed issued by the county treasurer of Lawrence county to the defendant Frederica Flormann.

It is alleged in the complaint that the plaintiff is the owner and entitled to the possession of the said mining property, and that the defendant unlawfully and wrongfully entered upon and detains possession of the same, and that the tax deed is void and is a cloud upon plaintiff's title. The defendants denied the plaintiff's title and right of possession and set up a number of other defenses, among which was: That the premises described in the complaint were and are one of two 80-acre placer claims, which were, during the years 1884, 1885, and part of 1886, claimed and occupied by the Greenwood Gold Mining & Milling Company, as and in connection with its mill and mill site, and in connection with a large number of unpatented lode mining claims then being worked and operated by it; that early in 1885 said company became heavily involved financially, and its properties were sold under execution,

and the same were conveyed to a new company known as the Greenwood Gold Mining Company, which, also failing in its operations, abandoned the same in 1887; that since said date the defendants Frederica Flormann and husband have been in the open, exclusive, and notorious possession of the same, claiming title thereto; and that the defendant Frederica Flormann has paid the taxes thereon from the year 1887 to the year 1903, inclusive, and made improvements thereon of the value of $1,000. In the view we take of the case, it is not necessary to set out the other defenses of the defendants in this opinion.

The case was tried to the court without a jury, and the court in its findings found: "(1) That plaintiff was not at the time of the commencement of this action, nor at any time since, the owner nor entitled to the possession of the property described in paragraph 1 of the complaint, nor any part thereof. * * * The said plaintiff and his grantors and predecessors in interest have never been in the possession of said premises. (2) That the tax deeds described in paragraph 2 of plaintiffs complaint does not cast a cloud upon any title of plaintiff. The said tax deed is void upon its face for the reason that it is not in the form provided by law." That the defendant Frederica Flormann has been in the actual, adverse, open, continuous, peaceable, and exclusive possession of the lands and tenements described since the year 1887. And that the said defendant has placed upon said premises, buildings and other improvements of the value of $2,000 and paid the taxes thereon. The court made other findings not material to the decision of this case. From its findings so made, the court concludes as matter of law that the plaintiff is entitled to no relief whatever in this action, and that judgment should be entered in favor of the defendants, dismissing plaintiff's complaint and cause of action upon the merits and for costs. Judgment was thereupon entered dismissing the action. A motion for a new trial was made and denied.

It is disclosed by the plaintiff's evidence that a United States patent was issued to Robert Flormann for the said premises and filed for record on the 14th day of February, 1888, that subsequently the said Robert Flormann conveyed the said premises to Joseph O. Rutter, that thereafter the title of Joseph O. Rutter was con-

veyed to George B. Gafford, and that George B. Gafford conveyed the same to Cora A. Steward, who subsequently conveyed the same to the plaintiff in this action. The defendants thereupon, over the objection of the plaintiff, introduced in evidence: Exhibit A: "A record of a location certificate dated May 18, 1884, and filed for record May 21, 1884, claiming 160 acres of placer ground, commencing ion Box Elder creek about 130 feet northwest of the north end center stake of Last Chance Lode, thence northwest, by Box Elder creek, about 1½ miles, and extending from rim rock to rim rock, containing about 160 acres, and signed by Robert Flormann, and seven other co-locators." Also, a deed from his seven co-locators to Robert Flormann of their interest in said location, bearing date of May 31, 1884, and filed for record June 4, 1884. Also a warranty deed dated April 9, 1884, executed by Robert Flormann to Mathew Laflin and Joseph Taylor and filed for record May 30, 1884, for this property, in which it was recited that for a valuable consideration the said Flormann has granted, bargained, and sold to the said Laflin and Taylor the following described lodes, mines, and mining property, situated in Greenwood mining district, in the county of Lawrence and territory of Dakota, and known and described as follows, to wit: The Last Chance, Florence, Victor, Merrimac No. 1, Merrimac No. 2, Merrimac No. 3, Pantheon, San Pedro, Nevada, Montana, and Box Elder Lodes; also the Box Elder water right, Hay creek water right, and two 80-acre mill tracts, all situated in said Greenwood mining district, which deed contains covenants of general warranty. Defendant also introduced in evidence a mining deed dated May 31, 1884, and filed for record January 9, 1885, executed by said Joseph Taylor and Mathew Laflin granting the Box Elder water right, Hay Creek water right, and two 80-acre mill tracts in the Greenwood mining district, to the Greenwood Mining & Milling Company, a corporation. The defendant then offered in evidence Exhibit E: A certified copy from the United States Land Office at Washington, D. C., of an abstract of title upon which the patent to Robert Flormann, No. 12,722 was issued for the purpose of showing that the patent introduced by the plaintiff was issued upon the location introduced in evidence by the defendant, which abstract of title shows the lo-

cation certificate by Robert Flormann and his seven co-locators dated May 13, 1884, and recorded May 21, 1884, and the deed from his seven co-locators to Robert Flormann of the 160 acres of placer ground described in said location notice. The defendants further offered evidence, over plaintiff's objection, tending to prove: That neither Robert Flormann nor Taylor and Laflin nor the Greenwood Mining Company had any other mill site or placer location in said Greenwood mining district, and that the said Greenwood Mining & Milling Company erected upon the premises in controversy a boarding house, blacksmith shop, and other improvements, and on the adjoining 80 acres a quartz mill and other improvements; that the defendants had been in the exclusive, open, and notorious possession of the said mining claim No. 403 since 1887, and had paid the taxes on the same up to 1903, except one year, for which year Frederica Flormann took a tax deed; that she had made improvements thereon of the value of $2,000, and was in possession of the same at the time of the trial; that neither Joseph O. Rutter nor any of his grantees had ever at any time been in possession of the premises in controversy.

Before proceeding to discuss the merits of the case, a preliminary question is presented for our decision by the counsel for respondent, and that will be first disposed of. It appears from respondent's additional abstract that, about eight months after the bill of exceptions was settled, the learned circuit court permitted the bill of exceptions to be amended, over the objection and exception of counsel for respondent, and without good cause or any cause therefor being shown, by inserting therein specifications of the particulars in which the evidence is insufficient to support the findings of the court. The respondents move that the specifications of errors so allowed by the said amendments to the bill of exceptions be stricken from the record, and that the same be, by the court, disregarded so far as the same are not properly set forth in the original bill of exceptions, and that such specifications in the original bill be disregarded, for the reason that they do not specify the particulars wherein the evidence is alleged to be insufficient to support the courts decision. The statement made in the respondent's additional abstract is not controverted by the appellants, and

hence must be taken as true. This motion must therefore be granted so far as the bill of exceptions was allowed to be amended by inserting therein the particulars in which the evidence was insufficient to support the findings of the court, for the reason that the court, in the absence of good cause shown, was without jurisdiction to allow the amendment to be made, as the emendment had the effect of settling a new bill of exceptions after the time allowed by law in the absence of good cause shown and without fixing a new time for the settlement of the bill of exceptions, as provided in section 306 of the Revised Code of Civil Procedure. The question presented by this motion was so fully discussed by this court in McGillycuddy v. Morris, 7 S. D. 592, 65 N. W. 14, McPherson v. Julius, 17 S. D. 98, 95 N. W. 428, and Blackman v. City of Hot Springs, 17 S. D. 378, 97 N. W. 7, that we do not deem a further discussion necessary.

The specifications of the particulars in which the evidence was insufficient contained in the original bill of exceptions must be allowed to stand and cannot be disregarded. Bowdle v. Jencks, 18 S. D. 80, 99 N. W. 98. Numerous errors are assigned by the appellant and discussed by the counsel in their briefs; but, in the view we take of the case, it will only be necessary to consider and discuss three questions arising upon these assignments of error, viz.: (1) Did the court err in overruling appellant's objection to the admission of the evidence of the defendant in regard to the circumstances connected with the location and transfer of the 80-acre tract in controversy in this action to Taylor and Laflin by said Flormann? (2) Is the evidence sufficient to justify the findings of the court? (3). Did the title apparently conveyed to Robert Flormann by the patent issued to him by the United States pass by operation of law to Taylor and Laflin and their grantees?

On the trial, the defendant Charles Flormann, being called as a witness, testified that he knew the location of the placer claim lot No. 403, and had been acquainted with it ever since it was located, that it was located in May, 1884, and, being shown a copy of the record of location, said that was a copy, and that all the co-locators of Robert Flormann conveyed their interest to him. The witness was then asked the following questions: "Do you know, Mr. Flor·

mann, whether this location that you and others made covers the same ground which is in controversy now?" To which he answered: "Yes, sir.    Q. I will ask you whether or not the ground covered by your location certificate already introduced in evidence is the same ground which was conveyed by your co-locators to Robert Flormann and by him to Taylor and Laflin? A. Same ground.    Q. Did your brother, Mr. Flormann, have any other ground, placer ground, or used as mill ground, than the ground covered by you and your co-locators' location certificate? A. Not that I know of. Not in Greenwood.    Q. State whether or not the Greenwood Gold Mining & Milling Company ever owned or claimed any other mill site or placer ground in Greenwood mining district than the two 80-acre tracts that were covered by your location certificate, if you know.    A. No, I know the ground the Greenwood Gold Mining & Milling Company owned and was in possession of.    Q. What did the Greenwood Company, if you know, put on these 80 acres in the way of improvements, right after the conveyance to them? A. On 404 they put a quartz mill and sawmill and blacksmith shop. On 403 they put frame buildings, boarding houses, office, and blacksmith shop.    The blacksmith shop was used in connection with the mining.    Q. How long did the Greenwood Mining & Milling Company operate this property and undertake to run its mill? A. Well they worked from about the 13th or 14th of May until the forepart of 1885, when they quit.    Q. When, if you know was their mill destroyed? A. I think in October, 1892.    Q. Do you know whether or not the mining property that belonged to the Greenwood Mining Company had been jumped before the mill was burned?    A. No.    Q. When was it that your wife took possession of this property now in controversy claiming to own it herself?" The court limited the answer to the time she went into possession of the property, and he answered: "I believe it was in 1887.    Q. What, if anything, did your wife do in the way of fencing, improvements, and otherwise?"    In answer to this question the witness stated, among other things, that they made fences, built root houses, dug a well 40 feet deep, built sheds, and cut firewood, and that the value of the improvements made was about $2,000.    All of this evidence, as well as the exhibits introduced in evidence on

the part of the defendant, were objected to upon substantially the following grounds: That the evidence was immaterial to any of the issues in this action (all the transactions and acts were prior to the issue of the United States patent to Robert Flormann), and as being an attempt in a collateral proceeding to attack a United States patent. The court overruled the plaintiff's objections, and to which ruling the plaintiff duly excepted.

It is contended by appellant in this court: That the deed from Flormann to Taylor and Laflin and by Taylor and Laflin to the Greenwood Gold Mining & .Milling Company was void for the want of sufficient description of the premises, and insufficient to give either actual or constructive notice to subsequent purchasers; that parol evidence is incompetent as against a bona fide purchaser for value and without notice, to show that the patent and deed described the same premises; that the patent was conclusive as to all things necessary to be performed to entitle Robert Flormann to a patent; and that they had been performed and the proceeding was not open to inquiry or subject to collateral attack. It will be observed that, in the original objection made in the court below by the counsel for plaintiff to the admission of evidence on the part of the defendant, there is no objection that the description of the property in the deed from Flormann to Taylor and Laflin was not a sufficient description, or that the deed was void for want of a good description, and it is contended in this court, by counsel for the respondents, that, the plaintiff having made specific objection in the court below to the introduction of defendant's evidence, he must now be confined in this court to the ground of the objection as stated in the court below. We are of the opinion that counsel for respondents are right in their contention. If the objection had been general, that the evidence was incompetent under the rules laid down by the late territorial Supreme Court in the case of Caledonia Gold M. Co. v. Noonan, 3 Dak. 189, 14 N. W. 426, and by this court in Pitts' Agricultural Works v. Young, 6 S. D. 557, 62 N. W. 432, the objection would have been sufficient; but assuming that the objection was properly taken, we are of the opinion that the court was right in overruling plaintiff's objection. The evidence did not in any manner tend to impeach, contradict,

or controvert the patent issued by the United States to Flormann; but the only object of the evidence was to show that the premises conveyed was the same premises included in the location made by Flormann and his co-locators, and that the deed from Flormann to Taylor and Laflin and from Taylor and Laflin to the mining company embraced the premises included in the patent.

The learned author of the subject of Deeds, in 13 Cyc. 607, 608, in discussing what extrinsic evidence may be shown for the purpose of enabling the court to construe a deed, says: "For the purpose of enabling it to ascertain the intention of the parties and to construe the deed, but not in a manner inconsistent with the words used so as to add to or detract from or alter the intent, the court will place itself as nearly as possible in the position of the parties when the instrument was executed, and will consider the origin and sources of its derivation, all the attendant surrounding circumstances or the existing state of facts, the situation of the parties and of the property, or the condition or state of things granted at the time, the state of the country, and generally, all sources of inquiry naturally suggested by the description, or which may have acted upon the minds of the parties, are open to inquiry within the limits of the rules relating to parol evidence in such cases. Where a deed is of doubtful meaning, or the language used is ambiguous, the construction given by the parties themselves, as elucidated by their conduct or admissions, will be deemed the true ones, unless the contrary be shown. So where all the parties have acted upon a particular construction, such construction should be followed unless it is forbidden by some positive rule of law." Mr. Jones, in his work on Evidence, sec. 496, in discussing the question as to what evidence may be admitted in such cases, says: "But if the lands are vaguely described, such evidence may be received, not to contradict the deed, but to identify the land, for example, to show that certain lands are well known in the community by the description given in the deed; and to identify land thus indefinitely described, evidence has in some cases been received of the acts of the parties as tending to show their understanding and construction of the deed." Lick v. O'Donnell, 3 Cal. 59; Pettigrew v. Dobbelaar, 63 Cal. 396; Dunn v. English, 83 N. J. Law, 126; Lego v. Medley, 79 Wis. 211, 48 ·

N. W. 375; Euliss v. McAdams, 108 N. C. 507, 13 S. E. 162; Lovejoy v. Lovett, 124 Mass. 270; Mulford v. LeFranc, 26 Cal. 88. In the latter case, the Supreme Court of California quotes the following from the case of United States v. Appleton, 1 Sumn. 502 Fed. Cas. No. 14, 463 : "In the construction of grants the court ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties." In Lick v. O'Donnell, supra, the following description as taken in connection with the extrinsic proof was held sufficient. "I, the undersigned, in presence of the witnesses and of the judge of this jurisdiction, do declare that I cede to Senor Francisco Ramirez one-half of my lot. This lot contains 50 varas square; that is to say, my said cession to the said Senor Ramirez is 25 varas square." This deed was objected to on the ground that it was void for vagueness of description of the premises it purported to convey. The court, however, permitted it to be read in evidence. The plaintiff then offered the deposition of Antonia Bujan, who testified that at the time he executed the deed to Lick he owned only one lot in Yerba Buena, and that that lot was No. 34, and that he never owned any other real estate in Yerba Buena. The description in this deed, taken in connection with the evidence that Bujan had no other lot in Yerba Buena, was held sufficient to convey to the plaintiff an undivided one-half interest in the property. In Pettigrew v. Dobbelaar, supra, it was held that a deed in which was described "all lands and real estate belonging to the said party of the first part wherever the same may be situated, together," etc., was a sufficient description of the premises to pass the title of the grantor to the grantee. The court in its opinion says: "If the lands in controversy belonged to Harvey, they passed by the deed last mentioned. Lick v. O'Donnell, 3 Cal. 59.

The acts of Taylor and Laflin and their grantee, the Gold Mining & Milling Company, in placing the improvements upon the two 80-acre tracts in controversy, shows clearly their construction of the conveyance made to them and by them conveyed to the company. All the facts and circumstances therefore showing the re-

lation of the parties to these premises were clearly competent as explanatory of the condition of the property at the time the conveyance was made, and subsequently by which the court was able to construe the conveyance made by Robert Flormann to Taylor and Laflin and by them conveyed to the mining company. It will be observed that, though the deed from Robert Flormann to Taylor and Laflin bore date of April 9, 1884, it was not filed of record until May 30, 1884, subsequently to the record of the location certificate dated May 18, 1884, filed for record May 21, 1884, and it does not affirmatively appear from the abstract when the deed from Flormann to Taylor and Laflin was delivered, and, as a deed only takes effect from the time of delivery, we may reasonably presume that it was not delivered until about the time it was recorded, and that at that time the 160-acre tract had been located; but, in the view we take of the case, it is, perhaps, not very material, as it is quite clear, from the circumstances attending the transaction as shown by the evidence that Robert Flormann, at the time he executed the deed to Taylor and Laflin, was intending the location of these mill tracts, and his subsequent acts show that he carried this intention into execution. It will be noticed that the deed purports to convey not only the twelve mining claims by names, and two water rights, but also two 80-acre mill tracts, all situated in the Greenwood mining district, and, while the description of itself does not fully identify the property to be conveyed, it did, in connection with the proof of the circumstances connected with the conveyance, sufficiently identify the tract to enable the court to say that the intention of Robert Flormann was to convey, as one of the 80-acre tracts, the premises in controversy, from the fact that, so far as the record discloses, there was no evidence proving or tending to prove, that Flormann had any other 80-acre locations of similar tracts in the Greenwood mining district, and that neither Taylor and Laflin nor the mining company had any other mill sites or placer locations in the Greenwood mining district.

It is contended by the appellant that the evidence was insufficient to justify the findings of the court; but in our opinion this contention is untenable. No evidence was introduced on the part of the plaintiff, as above stated, proving, or tending to prove, that

Robert Flormann had any other tracts of land used for mill purposes or any purposes other than lode mining claims in the Greenwood mining district. There was no evidence proving, or tending to controvert, the testimony of Charles Flormann that said mining company erected a boarding house, blacksmith shop, and other improvements upon the 80-acre tract in controversy. It is quite clear therefore, under the evidence uncontradicted, the court was fully justified in finding that the 80-acre tract in controversy was conveyed by Robert Flormann to Taylor and Laflin, and by them conveyed to the mining company, prior to the issue of the patent for the same premises by the United States to Robert Flormann.

It is contended by the appellant that, as Robert Flormann had no title to the two 80-acre tracts at the time his deed bears date, April 9, 1884, his after-acquired title obtained from the United States by his patent did not pass to his grantee, Taylor and Laflin; but this contention is untenable. It will be observed that the deed from Flormann to Taylor and Laflin was a full covenant warranty deed, and the question presented is: Did this deed sufficiently describe the premises in controversy, in connection with the other evidence on the part of the defendants, to pass Flormann's title by operation of law? It is contended by the respondent that the title apparently conveyed to Flormann, by the United States patent passed by operation of law to Taylor and Laflin and to their grantees, the Greenwood Gold Mining & Milling Company, and that consequently the plaintiff in this action acquired no title from Robert Flormann by reason of his deed made in 1887 to Rutter, the remote grantor of the plaintiff. In our opinion the respondents are clearly right in their contention. In Bernardy v. Mortgage Company, 17 S. D. 645, 98 N. W. 167, this court held that, "where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or his successors," as provided by subdivision 4 of section 947 of the Civil Code. As stated in that opinion, this section of the Code is a copy of the corresponding section of the Civil Code of California and modifies the rule of the common law, in that the section omits the common-law qualification that the deed purporting to convey the title, which

carries with it an after-acquired title, must be a full covenant warranty deed, and provides that the title passes by operation of law, instead of by way of an estoppel; but the deed from Flormann to Taylor and Laflin would, under the common law, carry with it Flormann's after-acquired title under his patent from the United States, and therefore, independently of the provisions of our Code, the apparent title acquired by Flormann under his patent passed immediately upon the issuance of the same to his grantees, their heirs and assigns.

The rule that one having no title to property, who purports to convey the same in fee to a grantee with full covenants of warranty, is estopped from asserting title to the property, which he has subsequently acquired, has long been the settled law of England and this country, and not only is the original grantor estopped from asserting any title to the property, but the heirs of the grantor and all grantees claiming by, under, and through him are equally estopped. In Comstock v. Smith, 13 Pick. 116, the Supreme Court of Massachusetts, in discussing this question, says: "It is a well-settled principle of the common law that if one conveys lands or other real estate, with a general covenant of warranty against all lawful claims and demands, he cannot be allowed to set up against his grantee, or those claiming under him, any title subsequently acquired, either by purchase or otherwise. Such new title will inure, by way of estoppel, to the use and benefit of his grantee, his heirs and assigns." In the case of Van Rensselaer, 11 How. (U. S.) 297, it was held: "If a deed of conveyance, expressly or by necessary implication, affirms that the grantor has and conveys, a fee-simple title in the land, his heirs are estopped from denying that he had that estate and passed it by the deed to the grantee; and this may appear, in any part of the deed, or by other writings which are referred to therein." And the Supreme Court of the United States, in its opinion, after quite a full review of the authorities, says: "The principle deducible from these authorities seems to be that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seised or

Vol. 23 S. D 22

possessed of a particular estate in the premises, and which estate the deed purports to convey, or, what is the same thing, if the seising or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estoppel from ever afterwards denying that he was so seised and possessed at the time he made the conveyance. The estoppel works upon the estate and binds an after-acquired title as between parties and privies. The reason is that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him in good faith and fair dealing should be forever thereafter precluded from again saying it." In Hoppin v. Hoppin, 96 Ill. 265, the Supreme Court of Illinois adopts the same view, and with apparent approval cites the case of Clark v. Baker, 14 Cal. 612, and also the case of Van Rensselaer v. Kearney, and quotes the part of the opinion herein before quoted. Jackson ex dem. Thurman v. Bradford, 4 Wend. (N. Y.) 619; Foss v. Strachn, 42 N. H. 40; Weidman v. Hubble, 1 Cow. (N. Y.) 613; Kinsman's Lessee v. Loomis, 11 Ohio, 475; McCrackin v. Wright, 14 Johns. (N. Y.) 193.

It will thus be seen that 'this court, in Bernardy v. Col. & U. S. Mortgage Company, established no new principle, and that the law as declared by our Code simply embodies the common law with the qualification that covenants of warranty are not necessary in order that the grantor of property shall be concluded by his deed, as to any after-acquired title, and that the after-acquired title passes by operation of law, instead of by way of estoppel, and is practically in accord with the decision of the Supreme Court of the United States in Van Rensselaer v. Kearney, supra, from which we have quoted. It therefore logically follows from these decisions that a party purchasing property has constructive notice of any prior conveyance made by his grantor by which he has purported to convey a fee-simple title, and that by such conveyance, although he may not have any title at the time the conveyance is executed, his after-acquired title will pass to his grantee. In Christy v. Dana, 42 Cal. 174, it appears from the statement of the case that the

action was one to foreclose a mortgage made by the mortgagor in his lifetime to the plaintiff upon a tract of land, which at the time was a part of the public domain, but upon which the mortgagor resided, and which he proposed to claim as a pre-emptor. This mortgage bore date of March 3, 1863. The patent was issued to the mortgagor April 13, 1866. On the 30th of April, 1866, the mortgagor and his wife conveyed the land by absolute deed to the defendants. The Supreme Court of California held, in that case, that, from the proof and findings, it appears that the land included in the deed is the same land embraced in the mortgage to the plaintiff, and that consequently the mortgagee had a right to subject the land to the payment of his mortgage. It is contended, said the court, that the trial court erred in admitting certain oral testimony on behalf of the plaintiff; but the testimony was competent to establish that the defendant had express notice of the plaintiff's mortgage before taking a deed for the land, if such proof had been needed; but we do not perceive the materiality of such proof when the mortgage was duly recorded and operated as constructive notice. It was further contended that inasmuch as the mortgagor had no title to the land at the date of the mortgage, the title which he subsequently acquired by means of the patent did not inure to the benefit of the plaintiff as mortgagee. To this contention the court replied: "This is no longer an open question in this court and is fully decided in Clark v. Baker, 14 Cal. 612, and Kirkaldie v. Larrabee, 31 Cal. 456." It will be observed that this case is directly in point, for the reason that the mortgagor, at the time he executed the mortgage, had no title, but proposed to claim it subsequently as a pre-emptor, and as a pre-emptor he did not acquire his title until some three years subsequently to the execution of the mortgage; and it will be further observed that, though the party claiming under the mortgage gave evidence tending to prove that the defendant had express notice of the plaintiff's mortgage when taking the deed to the land, the court in its opinion states: "We do not perceive the materiality of such proof when the mortgage was duly recorded and operated as constructive notice." See, also, cases cited in Kirkaldie v. Larrabee.

As the deed from Robert Flormann to Taylor and Laflin was duly acknowledged and recorded, the plaintiff is charged with constructive notice of the prior conveyance of the premises in controversy by Flormann to Taylor and Laflin, and, if he had any doubt as to the identity of the premises conveyed by Flormann to Taylor and Laflin as being the same included in the patent to Flormann, he was required to make investigation and inquiries as to the identity of the property conveyed by the deed and patent. Sengfelder v. Hill, 21 Wash. 371, 58 Pac. 250. Had the plaintiff made such inquiries, he would have ascertained the facts disclosed by the evidence in this case and which, in our opinion, should have satisfied him that the mining ground conveyed by the patent included one of the 80-acre tracts so conveyed by Flormann to Taylor and Laflin.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.

FULLER, J., dissents.