FREDERICK U. NORTHRUP

*v.*

CATHERINE ACKERMAN et al.

[Submitted December 26th, 1914.   Decided December 31st, 1914.]

1. Construction of a will, though asked by the parties in a suit to foreclose a mortgage, being unnecessary to doing full justice under the issues raised by the pleadings, may not be had.

2. A., who joined with C. in making a bond for a loan of money, containing an agreement to pay charges "on the premises described in the mortgage accompanying this bond," was charged with notice that C., in making the mortgage, was conveying the fee-simple and covenanting as owner, and so is estopped to set up, against the mortgagee, any remainder interest.

3. A title acquired by one after mortgaging to secure a loan, and covenanting as owner in fee, enures to the benefit of the mortgagee.

4. The after-acquired title of a mortgagor enures to the benefit of the mortgagee, not only against the mortgagor, but as well against one who, with knowledge of the facts, takes a warranty deed free from encumbrances from the mortgagor.

Heard on bill, answer, replication and proofs.

*Messrs. McDermott & Enright,* for the complainant.

*Mr. Elgin L. McBurney,* for the defendants.

GRIFFIN, V. C.

The bill in this case is filed to foreclose a mortgage made by Catherine Ackerman to Josiah Northrup, which by mesne assignments is now vested in the complainant. It appears that William A. Ackerman, being seized of the premises in question, departed this life in the year 1885, leaving a last will and testament, which was admitted to probate by the surrogate of the county of Bergen, October 14th, 1885, the pertinent paragraphs of which are as follows:

"*Secondly.* I give, devise and bequeath unto my beloved wife, Catherine, all my estate, of every description, both real and personal, whatsoever and wheresoever the same may be found, which I give unto her and her heirs and assigns forever.

"*Thirdly.* In case my said wife should not survive me, or if she survives me and shall die intestate, then, and in either case, I give, devise and bequeath all the property, real and personal (so given to her) unto Sarah B. Cannon, wife of Harrison T. Cannon, to dispose of as she may think proper for her own benefit."

Under this will it is claimed that Catherine took an estate for life, with power of appointment by will; that Sarah B. Cannon took either a vested remainder in fee, subject to be defeated by Catherine leaving a will, exercising the power of appointment; or a contingent remainder in fee, the contingency being not as to the person, but as to the exercise of the power of appointment by Catherine. Since the probate of the will Sarah conveyed her interest in the lands devised to Catherine and her son Abraham. Catherine and Abraham made the bond secured by the mortgage in suit. Catherine alone made the mortgage to secure this bond. Afterwards, Abraham conveyed to his mother, and she thereupon conveyed the premises to the defendant Brick, by full covenant warranty deed, ignoring the existence of the complainant's mortgage.

The arguments of counsel deal very largely with the construction of the will of William A. Ackerman, and they ask the court in the determination of the issues between them to construe the will. This is wholly unnecessary. The titles, estates and interests of all the parties spring from a common source and are similarly affected by the will, thus enabling full justice to be done under the issues raised by the pleadings without passing on the efficacy of the deed of Sarah to give any title, or the right of Catherine, in view of the deed and mortgage given by her, to now exercise the power of appointment under said will. These are questions which may more properly be decided when the situation calling for their direct determination arises. *Bird* v. *Davis, 14 N. J. Eq. 467, 479; Hoagland* v. *Cooper, 65 N. J. Eq. 407; Shreve* v. *Wilkins, 82 N. J. Eq. 18.*

The history of the case is as follows: On the 1st of May, 1869, the testator, William A. Ackerman, and Catherine, his wife, made their mortgage to Garret V. Demarest for $1,500,

covering the premises in question. William A. Ackerman died in the year 1885. On May 9th, 1896, the executors of Garret V. Demarest assigned this mortgage to Josiah A. Northrup with a covenant that there was then due $800. This assignment was recorded on the 12th of May, 1896, and on the same day the mortgage was discharged by a satisfaction piece. On May 7th, 1896, just prior to the cancellation of the above mortgage, there was recorded a mortgage made by Catherine Ackerman, widow, to Josiah A. Northrup, for $1,800, dated May 1st, 1896, covering the premises sought to be foreclosed and other property. This mortgage was in the common form, the granting clause and *habendum* being in fee. There was also contained therein a tax clause, as follows:

"And the said Catherine Ackerman for herself, her heirs, executors and administrators does covenant and grant to and with the said party of the second part, his heirs and assigns that the said party of the first part, her heirs and assigns shall not nor will apply for or claim any deduction by reason of this mortgage from the taxable value of the said lands and premises and that the said party of the second part, his heirs and assigns shall and may from time to time and at all times after default shall be made in the performance of the proviso or condition herein contained peaceably and quietly enter into, have, hold, use, occupy, possess and enjoy all and singular the above granted and bargained premises with the appurtenances without any let, suit, trouble, hindrance or denial of the said Catherine Ackerman, her heirs or assigns or any other persons whatsoever."

On May 20th, 1899, Sarah B. Cannon, with her husband, conveyed to Catherine Ackerman, widow, and Abram W. Ackerman, in fee-simple, with *habendum* in fee and a covenant against grantor's acts, the following:

"All right, title or interest which the said Sarah B. Cannon may or can have or claim in and to any and all the estate, both real and personal, and wheresoever situate, of which William A. Ackerman died seized, said interest or claim arising from and by virtue of the provisions of the last will and testament of William A. Ackerman, deceased, bearing date February 7th, 1885, and recorded in the Bergen county surrogate's office in Liber P, page 282."

On the 11th day of August, 1902, the $1,800 mortgage above mentioned was discharged of record, and another mortgage was

made by Catherine Ackerman, widow, to said Josiah Northrup, bearing date August 1st, 1902, acknowledged on the 8th day of August, 1902, and recorded on the 11th day of August, 1902, for $2,200, conveying property described in the bill and other property. This mortgage was likewise in the common form, the granting clause and *habendum* being in fee, and contained the identical tax clause in the last-mentioned mortgage above recited.

On the 1st of December, 1906, another mortgage was made by Catherine to Josiah, in the sum of $1,200, conveying in fee the same premises, with *habendum* in fee, which mortgage also contained the tax clause above recited.

On the 20th day of February, 1910, the last two mentioned mortgages, amounting to $3,400, were receipted for cancellation by the said Josiah and were actually canceled of record on the 21st day of February, 1910.

On the 1st day of February, 1910, as appears by the date thereof, Catherine Ackerman and Abram W. Ackerman made their bond to Josiah Northrup in the penal sum of $8,000 with condition to pay $4,000 on February 1st, 1913. Said bond is on the common printed form and contains an agreement to

"pay any tax, assessment and water rent, or other municipal or governmental rate; charge, imposition or lien imposed or acquired upon the premises described in the mortgage accompanying this bond,"

and further providing in case of default, that the bond should become due and payable at the option of the said Josiah.

The mortgage given to secure this bond (being the mortgage here sought to be foreclosed) bears date the same date as the bond, and is made by Catherine Ackerman, widow, alone, Abram W. not joining therein. It recites that Catherine is indebted to Josiah in $4,000, secured to be paid by her certain bond, &c. No mention is made that Abram is on the bond. It then recites the tax and insurance clauses in the bond and conveys in fee the premises described in the bill, with *habendum* in fee. Said mortgage also contains the following covenant:

"And the said Catherine Ackerman, the owner of the lands above described, for herself, her heirs and assigns, does further covenant and agree to and with the said party of the second part, his heirs, executors,

administrators and assigns, that she or they will pay in full all taxes levied, or to be levied, upon the lands embraced in this mortgage, and will not claim any credit on, or make any deduction from the interest or principal hereby secured by reason of the payment of any taxes so levied, during the continuance of the lien of this mortgage, and upon the breach of this covenant or any part thereof, this mortgage may become and be due and payable immediately, at the option of the said party of the second part hereto."

This bond and the mortgage accompanying it, by assignment, came to the possession of the complainant.

On the 5th day of December, 1911, Abram W. Ackerman, who was the son of Catherine (and one of the grantees in the deed from Sarah B. Cannon), with his wife, conveyed by deed of bargain and sale, in fee, with *habendum* in fee, to said Catherine Ackerman, widow,

"All their interest to that certain tract or parcel of land and premises hereinafter particularly described, situate, lying and being in the borough of Saddle River formerly township of Washington in the county of Bergen and State of New Jersey. The intention being to release and convey unto the said Catherine Ackerman all the right, title and interest which the parties of the first part can or may have or claim as grantees of Sarah B. Cannon in and to any and all the estate both real and personal wheresoever situate of which William A. Ackerman died seized. Said interest or claim of the said Sarah B. Cannon arising from and by virtue of the provisions of the last will and testament of William A. Ackerman, deceased, bearing date February seventh, eighteen hundred eighty-five and recorded in the Bergen county surrogate's office in Liber P, page 282," &c.

This deed was acknowledged on the 6th day of December, 1911, and recorded on the 7th day of December, 1911. Some time in December, 1911, either on the 6th or some day prior thereto, an agreement was drawn between

"Catherine Ackerman, widow, of Saddle River, Bergen county, New Jersey, *Abram W. Ackerman, her son, of the same place, and Jessie Ackerman, his wife*, all parties of the first part, and Louis Brick, of Montclair, New Jersey, party of the second part."

At the time the agreement was prepared the day of the month was left blank, and afterwards the word "sixth" was inserted, making the date December 6th, 1911. The words underscored were erased, and the word which was originally "parties" was

corrected by writing "y" over "ies." In and by the said agreement the first party agreed to sell, and the second party agreed to buy the lands described in the mortgage for the sum of $7,750, which the second party agreed to pay to Catherine in manner following:

*First.* Five hundred dollars on the execution and delivery of the agreement, the receipt of which is acknowledged.

*Second.* Four thousand dollars by taking said premises subject to a mortgage now a lien thereon for that amount, which said mortgage has still about one year to run, and which bears interest at the rate of five per cent. per annum, and on which the interest shall have been paid up to the date of the delivery of the deed, or the amount then due for said interest is to be deducted from said consideration price.

*Third.* One thousand dollars on the delivery of the deed.

*Fourth.* Mortgage "to Catherine Ackerman, one of the parties of the first part hereto" for $2,250.

In the contract it was provided that the party of the first part should deliver to the party of the second part a sufficient deed conveying the premises

"in fee-simple absolute free and clear of any and all encumbrances and liens whatsoever excepting the lien of the said mortgage for $4,000, and which deed is to be delivered at the office of Louis Wertheimer, the attorney for the party of the second part hereto, Nos. 302, 304 Broadway, Manhattan borough, New York City, on the fourth day of January which will be in the year one thousand nine hundred and twelve at eleven o'clock in the forenoon."

At the foot of this contract is the following memorandum:

"The closing of the above contract is hereby adjourned by consent, to January 11th, 1912, at same time and place. Dated Jan. 4th, 1912.
"Louis Brick, by
"Louis Wertheimer, *his Atty.*"

Prior to January 4th, 1912, the date fixed for passing the title, Catherine Ackerman, widow, by deed dated December 8th, 1911, and recorded February 3d, 1912, at nine thirty-one A. M., conveyed the premises described in the bill, in fee-simple, by full covenant warranty deed free from all encumbrance.

This deed contains no reference to the mortgage in suit.

On January 27th, 1912, Abram W. Ackerman conveyed the premises described in the bill to said Louis Brick by full covenant warranty deed, the covenants being the same covenants as those contained in the deed to Brick from his mother, Catherine. This deed was acknowledged the 27th day of January, 1912, and recorded February 3d, 1912, at nine thirty-one A. M.; the deeds from mother and son to Brick being lodged with the clerk for record at the same minute.

On the 31st day of January, 1912, said Louis Brick executed, acknowledged and delivered to said Catherine Ackerman an agreement as follows:

"In consideration of the sum of one dollar and other valuable consideration to me, Louis Brick, in hand paid by Catherine Ackerman, of Saddle River, Bergen county, New Jersey, receipt whereof by me is hereby acknowledged, I hereby permit her to continue in possession of the premises in Saddle River where she is now residing, for the rest of her life without any claim in my favor for rent, subject, however, to the rights of any person other than myself, and I hereby underake to pay the interest on four thousand ($4,000) dollars of mortgage at six per cent. (6%) per annum on said premises as long as she may live, and to pay the taxes thereon as they respectively become due and payable.

"Dated, New York, January 31st, 1912.

"(Signed)    LOUIS BRICK.    [L. s.]"

On the foregoing facts, the questions to be determined are these (1) when Abram W. Ackerman conveyed to his mother, Catherine, on December 5th, 1911, did such title enure to the benefit of the complainant and enlarge the estate actually covered by the mortgage, so that later, when (2) Catherine and Abram both conveyed to Brick, did not Brick take subject to the lien of the complainant's mortgage?

The evidence shows that this mortgage was given to secure the bond of Catherine and Abram, who together were seized of all of the estate, right, title and interest which may be affected by a decree of foreclosure in this suit. Abram, in executing the bond, as appears from the recitals therein, knew that his mother was making a mortgage covering the fee-simple, and that that mortgage was given to secure said bond. Such circumstances would seem sufficient to create an estoppel against Abram from

asserting that the mortgage made by his mother did not cover his as well as his mother's interest in the lands. The mortgage also indicates that the mortgagor and mortgagee both understood and intended that the mortgage would convey a fee-simple. She covenants as owner, and covenants to bind her heirs—covenants which would be senseless if she did not intend to convey a fee. Therefore, when, afterwards, Abram conveyed his interest in these lands to his mother, the estate thereby vested became at once subject to the lien of the mortgage. *Van Rensellaer* v. *Kearney, 11 How. 297; Hannon* v. *Christopher, 34 N. J. Eq. 459; Shreve* v. *Harvey, '74 N. J. Eq. 336.*

The above cases had to deal with deeds where there were no covenants of warranty, but the intent to convey and the expectation of receiving the fee clearly appeared in the instruments.

Treating the mortgage as a conveyance, and applying the same rules as above applied to deeds, it is perfectly clear, from the whole course of dealings between the parties and from the instruments themselves, that Catherine intended to convey, and Northrup, the mortgagee, expected that his mortgage would cover the fee-simple in the lands in question. Not only did the granting clause in all of the mortgages convey a fee, and the *habendum* was in fee, but the various covenants, by binding not only the mortgagor but her heirs and assigns, clearly indicate the intent of the parties. It would be senseless for Catherine to covenant binding her heirs to the performance of certain things to be done with respect to the lands, when, on her death, the lands could not descend from her to her heirs. And particularly, in the mortgage in suit, the tax covenant recites that she is the owner of the lands, and, as such covenants for herself and her heirs. Added to this is the fact that this mortgage is given to secure the joint debt of Abram, who held the outstanding interest, and Catherine, his mother. His bond refers to this mortgage. He is therefore charged with notice that when his mother made this mortgage she was conveying the fee-simple; and he joined in the transaction whereby the mortgagee canceled the prior indebtedness and paid certain moneys in cash as the consideration of this mortgage. Abram was clearly estopped from setting up his interest. The case is not one where Abram even

stood by and saw his mother mortgage his interest in the lands without speaking; but he was an actual party to the transaction whereby the mortgagee canceled his prior securities and paid additional sums of money in cash which payment enured to his, Abram's, benefit.

There is another view of the case also which should lead to a decree for the complainant, namely: A mortgage stands on a somewhat different footing as to after-acquired title enuring to the benefit of the mortgagee by way of estoppel, than a deed. As was said by Chief-Justice Field, in the case of *Clark* v. *Baker, 14 Cal. 612; 76 Am. Dec. 449:* "The mortgagor holds a very different relation to the mortgagee from that of a vendor to a vendee. By the execution of a conveyance without warranty all relations between vendor and vendee are dissolved. They henceforth hold one another at arms'-length as they do the rest of the world. The dealing between them is completed; nothing further remains to be done. The reverse is the case between mortgagor and mortgagee. By the execution of the mortgage the transaction between them has only begun. Every substantial part remains to be performed. The mortgagee is to return to the mortgagor the estate, and the mortgagor is to return to the mortgagee the money and interest secured; and until this is consummated the obligation rests upon both to do nothing which can impair the rights of the other or embarrass their enforcement." After discussing the reciprocal rights and duties of the mortgagor and mortgagee, the chief-justice then proceeds to say: "It is sufficient in this case to observe that the relation is one which requires him [the mortgagor] to preserve the property for the purposes of the security for which it was originally pledged; and, hence, to insure good faith and fair dealing he is forever precluded from denying the existence of the lien which he has attempted to create, or defeating its enforcement against the property upon which it was placed. In the case at bar the mortgage is upon the property, and not upon any particular estate therein or right thereto. It is the property itself which Baker has pledged, and it is the property itself which he has promised by his contract to preserve for the purposes of the security; and equity will not suffer him, in violation of good

faith, by any act, to impair or destroy the security. Any claim or outstanding title he may₁ have purchased only went to strengthen his own title to the premises, and hence, through him, to give greater value to the security." While it appeared in this case that the statute of California gave to a deed or mortgage conveying a fee the same attributes as if they had contained covenants of title, nevertheless the chief-justice did not rest his opinion solely on the statute, but as well upon general equitable principles, and the excerpts from his opinion above quoted had reference not to the statute, but to those general equitable principles.

The principle above enunciated that the subsequently acquired title of the mortgagor enures to the benefit of the mortgagee by way of estoppel, is confirmed by the English cases. In *Doe, ex dem. Ogle et al.* v. *Vickers, 4 A. & El. 782 (111 Eng. Rep. 927)*, Chief-Justice Lord Denman said: "He [the mortgagor] mortgages the land as his own. Then ejectment is brought against him by a third party, in which he consents to a verdict and takes a fresh lease from the party; what effect can this have as between himself and his mortgagees?" Mr. Justice Littledale said: "If he found that the Earls of Shrewsbury and Berwick had a title superior to his own, it was his duty to get a good title. He cannot set up such a title after he has obtained it as an answer to this ejectment."

In *Goodtitle* v. *Baily, 2 Cowp. 597 (98 Eng. Rep. 1260)*, Lord Mansfield said: "It shall not lie in his mouth to dispute the title, &c., no more than it shall be permitted to the mortgagor to dispute the title of the mortgagee."

In *Right* v. *Bucknell, 2 B. & Ad. 278 (109 Eng. Rep. 1146)*, decided by Lord Tenterdon, the dispute arose between the first and second mortgagee. At the time the first mortgage was made the mortgagor had merely an equitable title. The instrument recited that "said Thomas Jarvis is legally or equitably entitled to the several messuages *or* dwelling houses conveyed," and in the covenant of title the releasor covenanted

"that he is and standeth lawfully or equitable, rightly, absolutely and entirely seized in his demesne as a fee of and in and otherwise well entitled to the said several messuages, dwelling-houses," &c.

Afterwards, Thomas acquired the legal title and made the second mortgage, the mortgagee having no notice of the existence of the prior mortgage. The court decided the case principally on two grounds—first, on the ground of uncertainty as to the estate covered by the instrument—that is, stating it in the alternative, that "he was entitled to a *legal or equitable* estate" was uncertain, and, therefore, could not operate by way of estoppel; and secondly, as the second mortgagee, at the time he took his mortgage had also delivered to him the title deeds and had absolutely no notice of the existence of the first mortgage, his right under his mortgage was a first lien on the legal estate. Lord Tenterdon, in his opinion, referred to the English cases holding that the after-acquired title enured to the benefit of the mortgagee by way of estoppel, and distinguished them from the case with which he was then dealing.

An examination of the New Jersey cases indicates that they are in accord with the cases above cited. In *Den* v. *Gardner, 20 N. J. Law 556* (at *p 560*), the supreme court said: "Whatever may be the effect of ordinary deeds of conveyance without warranty, including a grantor who has released or conveyed without interest, yet in relation to mortgages the question is well settled. By an equitable estoppel, based upon the legal fraud which would be otherwise permitted, one who mortgages land as his own, upon suit thereupon brought against him, shall not be permitted to derogate from his own mortgage by denying his title, or setting up title in a third person."

The above principle was afterwards approved by the court of errors and appeals in the case of *Demarest* v. *Hopper, 22 N. J. Law 599,* in the dissenting opinion of Judge Carpenter. The case, however, did not concern a mortgage, and *Den* v. *Gardner* was merely cited to illustrate the point made by the justice in his opinion.

In *Decker* v. *Caskey, 3 N. J. Eq. 446,* the court said (at *p. 449*): "If a mortgage be made of an estate to which the mortgagor has not a good title, and then he who has the real title conveys to the mortgagor or his representatives with a good title, the mortgagee will be entitled in equity to the benefit of it."

In *Bird* v. *Davis, 14 N. J. Eq. 467* (at *p. 479*), Chancellor Green said: "Upon a bill to foreclose, the mortgagor cannot dispute his title to the mortgaged premises. The decree will bind his interest, whatever it may be, and nothing more."

It might be urged that the cases of *Smith* v. *De Russy, 29 N. J. Eq. 407,* and *Shreve* v. *Harvey, 74 N. J. Eq. 336,* state a different doctrine; but a careful examination of those cases will show clearly that they do not. In *Smith* v. *De Russy,* decided by Chancellor Runyon, in 1878, the complainant conveyed to the mortgagor by deed without covenants. There was no covenant of seisin or warranty in the mortgage. The entire premises were described in the mortgage as being mortgaged thereby. Following the description was the statement that the property mortgaged "is the same which was conveyed by the complainant to the mortgagor by deed of even date with the mortgage," and that the mortgage was given to secure the payment of part of the purchase-money of that conveyance, and such was the fact. This recital was clearly a limitation on the property mortgaged, namely, it was the same property which the complainant conveyed; and, on principle, the vendor could not complain if the estate covered by the mortgage was no greater than that conveyed by the deed, as the mortgage was given to secure part of the consideration for a conveyance which did not vest in the mortgagor the estate described in the deed. Clearly, at the time the deed and mortgage were made it was neither the intention nor the expectation of the mortgagee that the mortgage should cover a greater estate than that which the mortgagee conveyed. In that case there was an outstanding title which did not pass by the deed, but which was afterwards acquired by the mortgagor, who subsequently made a mortgage covering the fee-simple in all the property. The court held that the lien of the second mortgagee was prior to that of the first mortgagee on the title subsequently acquired.

This seems to be the interpretation of this case entertained by Chancellor Walker in *Shreve* v. *Harvey, supra,* in which case it appeared that four brothers and four sisters were seized as tenants in common of the fee of a farm. The four sisters conveyed to the four brothers. One brother, William T. Harvey,

was a minor. The three adult brothers made a mortgage in fee to the sisters, which, in effect, actually mortgaged a three-fourths interest in the property. William T. Harvey became of age two years after the making of the mortgage, and died about thirty years later, and by his will devised to his brothers. During his lifetime William was recognized as a part owner of the premises and dealt with respect thereto. The chancellor found that it was not the intent of the parties at the time the mortgage was made that the mortgage should cover the after-acquired estate of William, and decided that when the one-fourth interest came to the brothers by devise of William T., it did not enure to the benefit of the mortgagees by way of estoppel. The mortgage in this case was also a purchase-money mortgage, and, in fact, covered more than the mortgagees conveyed, because the mortgagees conveyed one-half of the estate, and the mortgage given in return, covered three-fourths of the estate.

The distinction raised by the cases seems to be between mortgages given to the vendor as part of the consideration or the purchase price, and those who, not having any title or interest in the property before the mortgage was made, advance money as a loan on the faith of the security pledged.

In the present case, when Catherine made the mortgage there appeared to be an outstanding interest in her son Abram, which it was her duty to acquire for the benefit of the mortgagee; therefore, when she procured a deed from Abram, in contemplation of law, it was obtained for the benefit of the mortgagee in performance of that duty.

It is clear that if Catherine was the owner of the premises on the date of the filing of the bill, a sale under the decree would divest her of all of the estate she had on the date of the making of the mortgage, as well as of that acquired from her son Abram. This precise issue is properly raised by the pleadings in the cause. *Chadwick* v. *Island Beach Co., 43 N. J. Eq. 616, 623.* But after Abram made his deed Catherine conveyed the premises in question to Brick by a full covenant warranty deed, free from all encumbrances. In view of this, the point propounded is, does the grantor, Brick, taking with full knowledge of the facts, stand in a better position to dispute the complainant's claim than

9

Catherine would be if she had not parted with the title? My conclusion is that he does not. The mortgage was recorded. It covered the fee-simple. When the contract to convey was made, Brick was informed of the existence of this mortgage, and provided in the agreement that the premises should be sold subject to that mortgage, and the amount thereof, on the settlement, should be deducted from the purchase price. No question appears to have been raised as to the *quantum* of estate owned by the mortgagor and covered by the mortgage until after the contract was executed, and, presumably, after the title was examined, which examination disclosed the infirmities above indicated—discovering which, the whole scheme was changed; Brick caused the mortgagor to execute a full covenant warranty deed conveying to him the fee-simple in the premises, free from all encumbrances, which covenant against encumbrances was broken the instant the deed was delivered. And, although Abram had theretofore conveyed to his mother, he procured Abram also to execute and deliver to him a full covenant warranty deed, free from encumbrances, when it is apparent that Abram at no time had any such estate. What the purpose of this deed was does not appear. And at or about the time of the delivery of the deeds, Brick signed an agreement permitting Catherine to continue in possession of the premises for the rest of her life without rent, Brick undertaking to pay the interest on the mortgage in suit and the taxes as they became due and payable. For aught that appears in the testimony, Brick has paid no part of the purchase price; he has not shown that he paid one dollar of consideration for his deed. The whole scheme is palpably transparent, and devised for the purpose of hampering the complainant in the collection of his mortgage debt.

I will advise a decree in favor of the complainant.