On September 22d 1925, the defendant, Isserman, purchased from Elizabeth Avenue Baptist Church of Newark a lot of land twenty-five by one hundred feet on Bergen street, in the city of Newark, for $7,000 and gave a $5,000 purchase-money mortgage to secure part of the purchase price. On the same day he gave the Chalfonte Realty Company a second mortgage for $1,800 on the same property.
On December 2d 1925, he conveyed this lot of land to Congregation Rabbi Meyer Isserman by deed duly recorded on January 4th, 1926. That deed contained the following provision:
"That the Party of the Second Part for itself, its successors and assigns doth covenant with the Party of the First Part, their heirs, executors, administrators and assigns forever. First: That the name (Congregation Rabbi Meyer Isserman) shall always be included as part of the name of the party of the Second Part. Second: That the premises herein conveyed shall be used for no other purposes than as a Hebrew Orthodox Synagogue. Third: It is further covenanted and agreed by and between the parties hereto that if the party of the Second Part dissolves or incorporates with any other society, adopting that society's name, or if either of the above covenants shall be breached by the party of the Second Part, then and in that event the property hereby conveyed shall immediately revert back to the Party of the First Part, their heirs, executors, administrators and assigns. In the event, however, that the premises hereby conveyed are sold, then the funds so obtained shall be held by the Trustees of the Party of the Second Part for the purpose of erecting a synagogue in any other suitable location, subject to the above covenants. The Party of the Second Part, for itself, its successors and assigns, by acceptance of this deed covenants and agrees to observe the said conditions with right of re-entry to the said party of the first part, their heirs, executors, administrators and assigns, in case of breach thereof." *Page 337 
In September, 1926, the Congregation Rabbi Meyer Isserman purchased the adjoining fifty feet of land on Bergen street, then subject to a first mortgage of $7,000 and a second mortgage of $4,016, and the Congregation gave Isserman a purchase-money mortgage for $3,500. On January 26th, 1928, the Congregation borrowed $10,000 from the United States Savings Bank of Newark and gave as security therefor what purported to be a first mortgage on the entire seventy-five feet frontage on Bergen street. Isserman had complete charge of the negotiation and consummation of this transaction on behalf of the congregation and he joined in the bond secured by the mortgage as co-obligor. The proceeds of this mortgage, together with $3,578.69 furnished by Isserman, were applied to the payment of the existing mortgages, including the Baptist Church mortgage on which there was then due $5,413.86 principal, interest and costs, and on which Isserman alone was liable as obligor. The Chalfonte Realty Company mortgage of $1,800 was subordinated to the lien of the new bank mortgage. The title company search obtained by the bank in connection with its loan did not disclose the recited conditions contained in the deed from Isserman to the Congregation, nor did Isserman himself disclose them to the bank, although he knew the bank was loaning its money upon the security of what it thought was a first mortgage on a fee-simple estate of the Congregation in the lands in question. Isserman joined as co-obligor in the bond accompanying this mortgage. In 1932 the mortgage was foreclosed by the bank in a proceeding to which Isserman as the holder of a subsequent mortgage was made a party defendant. He interposed no defense and the mortgaged property was purchased by the bank at the foreclosure sale and resold to the complainant Congregation Beth Hamedresh Hagadol for the consideration of $12,000, of which $10,500 was secured by a purchase-money mortgage. This transaction was closed in October, 1933, after considerable delay resulting from Isserman's appeal from an order of this court denying his application to set aside the decree and sale in the foreclosure suit. Thereafter, the complainant Congregation expended approximately $28,000 in the erection of a synagogue on that portion *Page 338 
of the premises which Congregation Rabbi Meyer Isserman had acquired in 1926. The original building on the lot sold by Alexander Isserman in 1925, was retained for certain of the Congregation's activities. Of these improvements Isserman had knowledge but said nothing. On December 8th, 1934, he brought ejectment proceedings in the supreme court of this state on the ground that the conditions in the deed above recited had been broken, and the title forfeited. Until this time, the complainant bank had no actual knowledge of the conditions contained in the Isserman deed. This suit was then instituted. The relief sought is (1) a perpetual injunction against the prosecution of the said ejectment suit or any other action seeking title or possession of the locus in quo or damages based upon the breach of the conditions contained in the above quoted clause of the deed; (2) a decree that the defendant has no interest in the lands involved; (3) a decree directing the defendants Isserman and Congregation Rabbi Meyer Isserman to specifically perform their agreement with the complainant bank to convey by way of mortgage an indefeasible estate in fee-simple in the premises in question; (4) in the alternative, that the complainant Congregation or the complainant bank be subrogated to the rights of the Elizabeth Avenue Baptist Church and the Chalfonte Realty Company as mortgagees to the amount of their respective mortgages which were paid out of the proceeds of the bank's $10,000 mortgage.
It is contended, first, that Isserman actively represented to the complainant bank that it was receiving a mortgage on an indefeasible estate in fee-simple and therefore is estopped from asserting the contrary; second, that by reason of his failure to inform the bank of his "outstanding interest" Isserman was guilty of constructive fraud and thus equitably estopped from asserting that interest against the bank and those claiming under it; and third, that Isserman's right of reverter was cut off by the decree and sale in the foreclosure suit.
Dealing with these contentions in their inverse order, the theory that a party to a foreclosure suit must disclose any title or interest paramount to the mortgage being foreclosed *Page 339 
or thereafter be barred from asserting it, has its genesis inChadwick v. Island Beach Co., 43 N.J. Eq. 616. The decision in the court of chancery (42 N.J. Eq. 602) had been rested entirely upon the proposition that a defendant who was the holder of a paramount title was under no obligation to disclose it. Although the reversal went upon another ground, rendering the appellate court's comment upon this point purely dictum, thatdictum is entitled to considerable respect. Chief-Justice Beasley said:
"When a complainant alleges that he holds a mortgage in fee upon certain lands, and prays that a sale shall be made of such property, such a claim seems, proprio vigore, to include, inferentially, an assertion that a title paramount to such mortgage does not reside in any of the parties to the suit. By such an assertion the defendants are called upon to admit or deny the existence of such lien upon the property, and plainly, if such lien exists, none of them can have a title superior to the right asserted in the bill. In the present instance the bill stated a mortgage, by force of which it claimed the right to have the land sold in fee under the decree of the court; the defendant, by force of the decree proconfesso, admitted this encumbrance, and that it was possessed of the efficacy ascribed to it; yet the doctrine criticised asserts that the defendant's title was not put in issue, although he was directly required to admit a fact which, if admitted, was subversive of the title held by him * * *.
"* * * it seems to me that, in view of a familiar and very essential principle of equity, a defendant, in the juncture stated, is bound to disclose his title. To remain silent, in such a position, is to be guilty of constructive fraud. The doctrine is established beyond controversy, and has been applied in innumerable instances. Treating of the subject, Judge Story (1Ed. Jur. 385) says: `Thus, if a man, having a title to an estate, which is offered for sale, and, knowing his title, stands by and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate, under the supposition that the title is good, the former, so standing by, and being silent, will be bound by the sale, and neither he nor his privies will be at liberty to dispute the *Page 340 
validity of the purchase.' If this be the law, as it unquestionably is, how can it be said that the defendant was not called upon to divulge his title, when he stood by and saw the suit proceed to decree and sale?
"In my opinion, a defendant in a foreclosure suit, if he has a title paramount to that of the mortgagee, and he intends to enforce it, must set it up in his answer."
Conceding that this was dictum, it must be remembered that it was the considered opinion not only of the distinguished jurist who was its author, but also of the court for which he spoke. In behalf of Isserman, it is said that there is no rule of law which imposes dicta upon any court. Conversely, there is no rule preventing a court from adopting that which another court has said obiter dicta. And there is considerable reason for such adoption in this instance, where the opinion thus stated was enunciated by the court of last resort. Particularly should it be noted that the court expressed itself so definitely and so positively upon this proposition, because, to paraphrase the language of the chief-justice, it was not willing to let its silence be construed into acquiescence with the contrary views of the court of chancery.
The rule thus stated in the Chadwick Case has never been questioned by any court of this state which has had to deal with a situation bearing any similarity to that case. It was first cited and recognized by Vice-Chancellor Grey in Burgin v.Rutherford, 56 N.J. Eq. 666, again by Vice-Chancellor Bergen and the court of errors and appeals in Board of Home Missions
v. Davis, 70 N.J. Eq. 577; affirmed, 71 N.J. Eq. 788; by Vice-Chancellor Griffin in Northrup v. Ackerman, 84 N.J. Eq. 117;
again by the court of errors and appeals in Kiernan v.Jersey City, 80 N.J. Law 273, and in West New York ImprovementCo. v. The Town of West New York, 88 N.J. Eq. 571; by Vice-Chancellor Ingersoll in Fidelity Realty Co. v. FidelityCorp., 109 N.J. Eq. 331, and finally by Vice-Chancellor Fielder in Sorg v. Tower, 119 N.J. Eq. 109. Counsel for Isserman has assiduously pointed out some factor in each of those cases to distinguish them on the facts from this case. By the same token, none of them were like the Chadwick Case in all particulars. The important *Page 341 
thing is the recognition and reiteration of the rule which was announced obiter dictum in the Chadwick Case. Nor can the defendant take any comfort from the statement in the KiernanCase that the court was not there particularly concerned with the soundness of that dictum so far as it related to interests held by a defendant that were paramount to the mortgage, especially when the same court, in the West New York Case
(about seven years later) expressly relied upon that dictum. In the Kiernan Case, it was not necessary to express any opinion upon the dictum; when the occasion did arise in the West NewYork Case, it was relied upon and cited along with the DavisCase.
Isserman also contends that he had no opportunity to file an answer in the foreclosure suit. That argument has already been disposed of adversely to him by the court of errors and appeals in United States Savings Bank v. Congregation, c., 114 N.J. Eq. 93.
Having failed in that proceeding to set up the possibility of reverter which he then had, and which was paramount to the mortgage, he cannot now assert any such right, or any title alleged to have accrued therefrom.
The conclusion reached renders unnecessary any discussion of the first and second points relied upon by complainants. I will advise a decree in accordance with the views herein expressed. *Page 342